Chad S. Pehrson (12622) cpehrson@kba.law
Thomas D. Briscoe (16788) briscoe@kba.law
Bryan B. Todd (19099) btodd@kba.law
**KB&A**
50 West Broadway Ste 1000
Salt Lake City, UT 84101
Telephone: (801) 994-4646

*Attorneys for Defendant*

---

### UNITED STATES DISTRICT COURT DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| THREAD WALLETS LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BRIXLEY BAGS, LLC, a Utah limited liability company,<br><br>Defendant. | **BRIXLEY BAGS, LLC'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND AMENDED COUNTER-CLAIMS**<br><br>Case No. 2:23-cv-00874<br><br>Judge Jill N. Parrish |

Defendant Brixley Bags, LLC moves for leave to file an Amended Answer to First Amended Complaint and Amended Counter-Claims, pursuant to Rules 15(a)(2) and 16(b)(4). Brixley seeks to add an additional affirmative defense (that Plaintiff's design patents are unenforceable due to inequitable conduct) and to assert new counterclaims under the Utah Bad Faith Assertion of Patent Infringement Act and for common-law fraudulent misrepresentation. These amendments are based on evidence of Plaintiff's misconduct uncovered late in discovery. Brixley has good cause for this untimely amendment and satisfies the liberal standard for leave to amend. The motion is brought in good faith, will not unduly prejudice Plaintiff Thread Wallets LLC, and the amendments are not futile. Brixley respectfully requests that the Court grant leave

to file its Amended Answer to First Amended Complaint and Amended Counter-Claims.

## I. BACKGROUND

This is a patent infringement case between two Utah-based companies, Brixley and Thread. (Also, Thread recently moved to add Kimberly O'Connell, Brixley's member and founder, as an individual Defendant.) In late 2020, Thread and Brixley each began offering similar cross-body bags for sale (a fact reflected in Plaintiff's own pleadings (Dkt. No. 20, ¶¶ 9, 18)). Thread sent Brixley a demand letter in April 2021, warning that Brixley's bag infringed the design in Thread's pending patent application (Dkt. No. 11, p. 6, ¶ 5). Although Brixley believed its product did not infringe the communicated patent claim, it nevertheless made specific design changes and showed them to Thread to try to avoid a dispute (Dkt. No. 11, p. 6, ¶ 6). Thread indicated it was satisfied with Brixley's changes; then took no action for over two years.

However, in October 2023, Thread abruptly renewed the issue: it sent Brixley a letter stating that U.S. Design Patent No. D905,105 (the "D'105 Patent") had issued to Thread, and that despite Brixley's 2021 redesign, Thread believed Brixley's bag still infringed the D'105 Patent (Dkt. No. 11, p. 7, ¶ 7). Thread then filed this lawsuit on December 4, 2023, alleging infringement of the D'105 Patent (Dkt. No. 2). Brixley answered the Complaint on February 5, 2024 (Dkt. No. 11), asserting various defenses and counterclaims for declaratory judgment of non-infringement and invalidity. On June 5, 2024, the parties stipulated to allow Thread to amend its complaint to add a second patent, U.S. Design Patent No. D1,025,591 (the "D'591 Patent") (Dkt. No. 18).

Fact discovery proceeded. In January 2025, during the tail end of fact discovery, Brixley discovered evidence of serious misconduct by Thread. In particular, Brixley learned that Thread withheld material prior art from the U.S. Patent and Trademark Office during prosecution of the D'105 and D'591 Patents, and that Thread's application for the D'105 Patent had been abandoned

in December 2020, before Thread engaged in discussions with Brixley while falsely representing that the application was still "pending." These newly uncovered facts show that Thread engaged in inequitable conduct before the Patent Office. Brixley could not have known the extent of this misconduct earlier.

On April 10, 2025, Brixley also asked Thread to stipulate to the filing of the amended answer. Thread's counsel declined on April 25. Brixley now seeks leave to file an Amended Answer and Counterclaims, attached hereto as **Exhibit A**. A redline is attached hereto as **Exhibit B**. Thread claims that certain information in these documents meets the definition of AEO Confidential under the Protective Order; therefore Brixley redacted that information and will file unredacted versions under seal.

## II.     LEGAL STANDARD

When a party seeks to amend a pleading after the deadline set by the scheduling order, the party must first satisfy Rule 16(b)(4). Under Rule 16, a scheduling order "may be modified only for good cause." This means that after a scheduling deadline has passed, "a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., BC v. Wells Fargo Nat. Bank Ass'n, 771 F. 3d 1230, 1240 (2014)*. The "good cause" requirement focuses on the movant's diligence. The movant must show "the scheduling deadlines cannot be met despite [its] diligent efforts." *Tesone v. Empire Marketing Strategies, 942 F.3d 979 (10th Cir. 2019)*. Good cause is often shown where the party learns new information through discovery. *Id.*

If good cause is shown, the Court then proceeds to the Rule 15 analysis. Rule 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires," and the Supreme Court has emphasized that "this mandate is to be heeded." *Foman v. Davis, 371 US 178 (1962)*; *see also*

*Calderon v. Kansas Dep't of Social and Rehab. Services*, 181 F.3d 1180, 1186 (10th Cir. 1999). Courts should therefore grant leave to amend in the absence of factors such as undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, repeated failure to cure deficiencies, or futility of amendment. *Foman*, 371 U.S. at 182; *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). Ultimately, the decision lies in the Court's discretion, but the default approach under Rule 15 is to allow amendments freely, so that cases may be decided on their evidence and merits.

### III. DISCUSSION

Brixley's motion should be granted. Brixley meets the Rule 16(b) good-cause requirement because it acted diligently. And all the Rule 15(a) factors weigh in favor of allowing the amendment: there is no undue delay or bad faith, and no undue prejudice to Thread.

#### A. Brixley Acted Diligently and Good Cause Exists Under Rule 16(b)

The scheduling order's deadline for amending pleadings has passed in this case, so Brixley must show good cause under Rule 16(b)(4). Brixley satisfies this standard. The critical facts giving rise to the inequitable conduct defense and the new counterclaims did not come to light until January 2025, during Plaintiff's deposition and related discovery. Until that point, Brixley had no way of knowing that Thread had intentionally concealed relevant prior art from the Patent Office.

Brixley has also proceeded diligently from the time it learned of Thread's misconduct. Inequitable conduct allegations are indeed serious, and Brixley took them seriously. Brixley carefully investigated the uncovered facts in view of the relevant law, including extensive discussions with multiple design patent experts. Brixley also provided Thread ample opportunity to consent and avoid this motion practice. When Thread declined (on April 25, 2025), Brixley promptly prepared and filed this motion. These facts demonstrate diligence.

### B. There Is No Undue Delay or Bad Faith by Brixley in Seeking Amendment

The proposed amendment is also proper under Rule 15(a) because Brixley has not exhibited any undue delay, bad faith, or dilatory motive. "Undue" delay means an unwarranted or inexplicable delay under the circumstances, typically coupled with some prejudice or tactical advantage sought by the movant. Here, Brixley brought this motion promptly once it had a solid factual basis and full investigation to support pleading inequitable conduct and the related counterclaims. Prior to the amendment deadline, Brixley simply did not have the evidence to support these claims – and it would have been improper for Brixley to assert such serious allegations without a complete factual basis. Thus, any "delay" in asserting these claims was due solely to Brixley's lack of earlier knowledge, not because Brixley slept on its rights.

This sequence negates any notion of undue delay. Brixley's purpose in seeking amendment is to ensure that it can present all relevant defenses and claims arising from the facts of this dispute, not to derail the litigation or harass Thread.

### C. Allowing the Amendment Will Not Unduly Prejudice Plaintiff

Prejudice is "the most important" factor in the Rule 15 analysis. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006). But here, Thread cannot demonstrate any unfair prejudice from the proposed amendment. In fact, the pleadings in this case are not even settled yet. Thread's own November motion to add an entirely new Defendants, the individual member of Brixley—Kimberly O'Connell—remains pending. (Dkt. No. 31).

The essence of undue prejudice is whether the amendment would "unfairly affect[]" the non-movant's ability to prepare or defend the case, for example by raising fundamentally new issues or legal theories late in the litigation. While Brixley's amendment introduces new legal theories (inequitable conduct, a statutory claim, and a tort claim), those theories are all grounded

5

in the same core facts. Thread was obviously aware of its own actions – indeed, Thread has had knowledge of its withheld prior art and the status of its patent application all along. Thus, the amendment does not introduce a "new" factual scenario of which Thread is unaware; it simply reframes Thread's conduct as additional claims/defenses in this lawsuit.

Thread cannot credibly claim surprise or inability to address these issues on the merits. To the extent Thread might need to take some additional discovery in response to the new counterclaims (for instance, to depose a Brixley witness about reliance or damages from the misrepresentation), that discovery would be relatively limited and can be accommodated. No trial date is set, and any marginal expansion of the case can be managed without undue disruption. In short, any prejudice to Thread is minimal and entirely curable by reasonable procedural accommodations, if needed. In contrast, denying leave to amend would severely prejudice Brixley by preventing it from pursuing valid defenses and claims simply due to timing technicalities.

### D. The Proposed Inequitable Conduct Defense and Counterclaims Are Not Futile

Finally, Brixley's proposed amendments are not futile. An amendment is considered "futile" only if the proposed claim or defense "would be subject to dismissal" as a matter of law, even after assuming the truth of the pleading's factual allegations. *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014). This is a high bar, and courts will not deem a claim futile unless it is clearly insufficient or dead on arrival. If there are any factual issues or colorable readings of the law that would permit the claim to survive, amendment should be allowed so that those issues can be resolved on the merits rather than in a preemptive denial of leave. Here, each of Brixley's new assertions is more than merely colorable – they are well-founded in law and fact, and certainly clear the low threshold of Rule 15(a) for permissibility.

**1. Inequitable Conduct (Affirmative Defense):** Inequitable conduct is a recognized

defense that, if proven, renders a patent unenforceable due to a patent applicant's fraud or deception on the Patent Office. To plead inequitable conduct, a defendant must allege that the patentee or its agents withheld material information or made false representations with an intent to deceive the patent examiner. Brixley's proposed amended answer pleads exactly that: Thread's representatives knew of specific prior art designs (highly material to the patentability of Thread's bag design) and yet deliberately failed to disclose those references to the USPTO during the prosecution of the D'105 and D'591 Patents. The materiality of the withheld prior art is evidenced by its similarity to the claimed designs, and intent can be inferred from Thread's conduct – especially given that the named inventors signed declarations acknowledging their duty of candor (*see* 37 C.F.R. § 1.56) while choosing not to reveal known prior art. These facts, taken as true, state a valid inequitable conduct defense. Indeed, far from being futile, this defense is compelling: if proven, it would completely bar Thread from enforcing the patents-in-suit due to its own misconduct.

    **2. Utah Bad Faith Assertion of Patent Infringement Act (Counterclaim):** Brixley also seeks to add a counterclaim under Utah's Distribution of Bad Faith Patent Infringement Letters Act, Utah Code § 78B-6-1901 et seq. (the "**Utah Patent Bad Faith Act**"). This state law, enacted to protect businesses from abusive patent threat letters, creates a cause of action for targets of patent infringement assertions made in bad faith. Brixley's proposed counterclaim alleges that Thread's April 2021 demand letter was a bad-faith assertion of patent infringement within the meaning of the Utah Act. The factual basis is straightforward: at the time Thread sent the letter threatening Brixley with a patent infringement claim, Thread's patent application had already been abandoned (and thus Thread had no actual patent rights or even a pending application in force). Thread's letter was deliberately misleading, suggesting that Brixley's product was likely to

infringe Thread's patent rights and pressuring Brixley to redesign or face legal consequences, all while concealing that Thread had no enforceable rights at that time. Making a knowingly false or misleading infringement allegation in a demand letter is the epitome of a bad-faith patent assertion that the Utah law is designed to remedy. Brixley's proposed pleading details how Thread knew that its patent had lapsed, yet chose to send the threat letter anyway to gain leverage over Brixley. Nothing about this claim is legally deficient on its face. Utah law permits a "target" like Brixley to bring an action for bad-faith patent assertions, and Brixley's allegations, if proven, would satisfy the elements of that cause of action. Thread may argue, in opposition, that this state-law claim is preempted by federal patent law or that the statute should not apply to Thread's conduct. Those arguments do not render the claim futile. To avoid preemption, the Utah Act (like similar statutes in other states) requires a showing of "bad faith," which is a standard consistent with federal law's limitations on state regulation of patent enforcement. Brixley's claim explicitly alleges bad faith, so it meets that criterion. Whether Thread's conduct ultimately amounts to "bad faith" under the statute is a factual question. There is certainly nothing inherently preempted or invalid about a state law that targets objectively baseless and knowingly false patent infringement claims – federal courts have recognized that patent holders do not have a right to make bad-faith threats of infringement without consequences. In any event, preemption is a complex legal issue that would need to be briefed and decided on a fuller record; it is not a clear bar to Brixley's claim at the pleading stage. Similarly, if Thread contends that the timing or particulars of the Utah Act might exclude this letter, that too is a matter of statutory interpretation and proof, not a basis to deem the claim futile now. In short, Brixley's Utah Act counterclaim is legally tenable and supported by detailed factual allegations – it is not "subject to dismissal" on its face.

3. **Fraudulent Misrepresentation (Counterclaim):** The final proposed counterclaim is for

fraudulent misrepresentation under Utah common law, based on the same underlying events. In Utah, a fraud claim requires: (1) a false representation of a material fact, (2) knowledge or belief by the maker that the representation is false (or reckless indifference to the truth), (3) intent to induce the other party to act upon the misrepresentation, (4) justifiable reliance by the other party, and (5) resulting damage. Brixley can plead each of these elements with specificity. The false representation was Thread's assertion (explicit or implied in the April 2021 letter and ensuing communications) that Thread had a viable patent application that would imminently issue and could be enforced against Brixley's product. Thread's representatives conveyed to Brixley that Brixley's bag was "similar to the design claimed in the pending" patent application and that Brixley should make changes or potentially face infringement liability. This was a materially false statement because, unknown to Brixley, the application was not actually pending at that time – it had been abandoned months earlier. Thread through its agents knew this was false, since Thread was responsible for the status of its own patent application.

The intent behind Thread's misrepresentation is evident: Thread wanted to induce Brixley to redesign its product. Brixley did, in fact, rely on Thread's representations – it undertook a costly redesign and believed it had appeased Thread's patent concerns, only to later learn that Thread's threats were hollow and premised upon false statements communicated by Thread's agents. Brixley's reliance was reasonable and foreseeable; Brixley had no way to independently verify the status of Thread's application at the time and took Thread's assertions at face value. As a result of Thread's deception, Brixley suffered harm, including expending time and resources on a redesign and losing opportunity in the marketplace.

These allegations satisfy each element of fraud. There is nothing novel or questionable about recognizing a fraud claim in this context – if one party lies to another about a material

business fact (here, the existence of patent rights) and the second party incurs costs as a result, the law provides a remedy. Thread might dispute the facts (*e.g.* claim it didn't "intend" to mislead or that Brixley's reliance was not justified), but those are classic factual disputes for trial, not grounds to deny pleading amendments. At this stage, the Court must assume the truth of Brixley's well-pleaded facts, and the fraudulent misrepresentation claim is sufficient.

In sum, none of Brixley's proposed new claims or defenses is futile. To the contrary, they are rooted in serious misconduct by Thread and present substantial questions that deserve to be heard on the merits. This case presents far more than a "threadbare" or legally deficient addition – it presents a scenario where the plaintiff's own wrongdoing may undercut its claims and give rise to independent liability. The proper course is to allow the amendment and let these issues be adjudicated, rather than to shut them out at the pleading stage. Because the amended pleading would not be subject to immediate dismissal.

## **CONCLUSION**

For the reasons stated above, Brixley requests leave to file the Amended Answer to First Amended Complaint and Amended Counter-Claims attached as Exhibit B. Plaintiff is not prejudiced by this request, and there has been no undue delay or dilatory motive on Brixley's part.

Dated this 28th day of April 2025.

Respectfully submitted,

**KB&A**

*/s/ Chad S. Pehrson*
Chad Pehrson
Thomas D. Briscoe
Bryan B. Todd

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 28, 2025, a true and correct copy of the foregoing **BRIXLEY BAGS, LLC'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND AMENDED COUNTER-CLAIMS** was served via the Court's electronic notification system and email on the following:

David P. Johnson
Brittany Frandsen
Workman Nydegger
60 E. South Temple, Suite 1000
Salt Lake City, Utah 84111
djohnson@wnlaw.com
djohnson-secy@wnlaw.com
bfrandsen@wnlaw.com
bfrandsen-secy@wnlaw.com
orders@wnlaw.com

*Attorneys for Plaintiff*

                                                */s/Chad S. Pehrson*