**EXHIBIT B**
**TO**
**BRIXLEY BAGS, LLC'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER**
**TO FIRST AMENDED COMPLAINT AND AMENDED COUNTER-CLAIMS**

Chad S. Pehrson (12622) cpehrson@kba.law
Thomas D. Briscoe (16788) tbriscoe@kba.law
Bryan B. Todd (19099) btodd@kba.law
KB&AUNZLER BEAN & ADAMSON, PC
50 West Broadway Ste 1000
Salt Lake City, UT 84101
Telephone: (801) 994-4646

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| THREAD WALLETS LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> BRIXLEY BAGS, LLC, a Utah limited liability company; <br><br> Defendant. | Case No. 2:23-cv-00874-JNP-JCB <br><br> **AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND AMENDED COUNTER-CLAIMS** <br><br> Case No. 2:23-cv-00874 <br><br> Judge Jill N. Parrish <br> Magistrate Judge Jared C. Bennett |

Design patents have "almost no scope."[1] Here, Thread Wallets incorrectly posits infringement of two design patents, even though Brixley's cross-body bag exhibits substantial differences from the patents' figures. (In fact, Brixley's design was expressly deemed to be a novel design by the USPTO.) As such, Brixley's bag does not infringe the asserted design patents, and judgment should be entered in favor of Brixley.

---

[1] *In re Mann,* 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings.").

~~Alternatively, Brixley also wins this litigation on a different legal basis. Back in 2021, Thread Wallets also claimed that Brixley infringed through a prior bag design. At that time, prior counsel for Thread Wallets agreed with Brixley's counsel that Brixley would implement changes to its bag design, and in exchange, Thread Wallets would not continue to assert its stretched infringement theory.[2] Brixley implemented design changes. Thread Wallets' counsel acknowledged those changes, expressed appreciation, and expressly stated the absence of a need to memorialize the agreement in a further writing. In implementing its subsequent business, Brixley reasonably relied upon this agreement and upon Thread Wallets' representations. As such, Brixley defeats the asserted patent claims on grounds of any of the related doctrines of license, laches, agreement, waiver, estoppel, and acquiescence.~~

The case concerns crossbody bag designs. In 2019, ███████████████████ ████████████████████ and other sources, including a Fjällräven Sling. In 2020, Plaintiff Thread Wallets filed a first design application for a crossbody bag D995,105 ("**D'105**"), but the application was abandoned for over a year (from December 2020 to January 2022). Meanwhile, in 2022, Thread Wallets ("**Plaintiff**") filed a continuation application (**D'591**") based on D'105, disclaiming certain features (logo, zipper) to seek broader design coverage.

Despite the abandonment, Plaintiff sent infringement demands to Brixley Bags in 2021–2023 while its patent rights were not yet restored. Brixley contends that the design patents are invalid and not infringed, especially given the prior existence of similar crossbody bag designs and the abandonment period:



Patent Figures:



Plaintiff engaged in a sustained pattern of bad faith by asserting nonexistent patent rights against Brixley Bags. Plaintiff's first demand letter falsely claimed that multiple design patents were pending when, in fact, the sole US application had already been abandoned. Plaintiff continued to misrepresent its patent rights to induce Brixley into a costly and good-faith redesign of its crossbody bag.

Plaintiff's D'105 patent application became abandoned on December 29, 2020, following Plaintiff's failure to respond to a Notice to File Missing Parts issued by the United States Patent and Trademark Office. The application remained abandoned for more than a year due to the dismissal of two petitions to revive, until it was revived on January 21, 2022. Thus, between December 29, 2020, and January 21, 2022, Plaintiff had no pending design patent application

relating to the asserted crossbody bag design. Nonetheless, Plaintiff expressly asserted the opposite in communications to Brixley. These false statements succeeded in duping Brixley, including because Plaintiff's design patent applications and associated prosecution histories were not publicly available until the patent applications were granted. Plaintiff further conveyed an interest in reaching an amicable resolution, emphasizing that, because Brixley was a fellow Utah company, Plaintiff preferred to resolve the matter cooperatively.

The following table presents a timeline of Plaintiff's D'105 patent application:

Table 1: Timeline of Abandonment and Revival of Plaintiff's D'105 Patent Application

| Date | Event | Effect |
|---|---|---|
| October 28, 2020 | USPTO issues Notice to File Missing Parts for D'105 application | Deadline to respond: 2 months |
| December 29, 2020 | No response filed; application becomes abandoned by operation of law | No pending application; no enforceable rights |
| December 29, 2020 – January 21, 2022 | Application remains abandoned | Plaintiff sends initial demand letter April 22, 2021 to Brixley and ongoing negotiations occur regularly during this period until Sept 28, 2021 |
| January 21, 2022 | USPTO grants petition to revive D'105 application | Application becomes pending again |

Plaintiff's misconduct escalated with its October 5, 2023, demand letter, which directly asserted infringement of a patent secured only after withholding highly material prior art from the USPTO in violation of the duty of candor. Plaintiff's new litigation counsel demanded that Brixley cease sales of its redesigned product and abandon its own independent design patent application, further attempting to eliminate lawful competition based on an invalid and improperly obtained patent.

Plaintiff's pattern of misrepresentation, material omission, strategic silence, and later coercive demands violates the Utah Bad Faith Assertions of Patent Infringement Act, Utah Code §78B-6-1901 et seq., and constitutes false and misleading statements under §78B-6-1903(2)(b)(vi).

Brixley Bags has incurred over $500,000 in damages to date and seeks treble damages, punitive damages, and all other relief deemed appropriate by the Court.

As to the specific allegations in the ~~FAC~~First Amended Complaint, Brixley answers ~~plaintiff Thread Wallets LLC's ("Thread")~~Plaintiff's Complaint as follows:

## THE PARTIES

1.  Brixley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 1 of the Complaint~~,~~ and therefore denies the same.

2. Brixley admits the allegations set forth in Paragraph 2 of the Complaint.

## NATURE OF THE CLAIMS

3. Brixley admits the allegations set forth in Paragraph 3 of the Complaint.

4. Brixley denies the allegations set forth in Paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

---

~~2 On August 11, 2021, Attorney James McConkie wrote "we are in agreement that your client Brixley will change the location of its zipper and logo in all future versions of its crossbody bag offering. The bag will also now include loops and a fourth ring on the back of the bag which will further help to distinguish it from the cross body bag offered by Thread Wallets."~~

5.      Brixley denies the allegations set forth in Paragraph 5 of the Complaint.

6.      Brixley admits the allegations in Paragraph 6 of the Complaint, that Brixley resides in the State of Utah, does business in the State of Utah, including selling their products in the State of Utah. Brixley denies the remainder of the allegations contained in Paragraph 6 of the Complaint.

7.      Brixley denies the allegations contained in Paragraph 7 of the Complaint.

## FACTUAL BACKGROUND

8.      Brixley lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 8 of the Complaint, and therefore denies the same.

9.      Brixley lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 9 of the Complaint, and therefore denies the same.

10.      Brixley lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 10 of the Complaint, and therefore denies the same.

11.      Brixley lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 11 of the Complaint, and therefore denies the same.

12.      Brixley denies the allegations contained in Paragraph 12 of the Complaint.

13.      Brixley denies the allegations contained in Paragraph 13 of the Complaint.

14.      Brixley lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 14 of Complaint, and therefore denies the same.

15.      Brixley denies the allegations contained in Paragraph 15 of the Complaint.

16.      Brixley denies the allegations contained in Paragraph 16 of the Complaint.

17.      Brixley denies the allegations contained in Paragraph 17 of the Complaint.

18.    Brixley denies the allegations contained in Paragraph 18 of the Complaint.

## FIRST CLAIM FOR RELIEF

### PATENT INFRINGEMENT-THE D'105 '105 PATENT

19.     Brixley repeats and realleges as if fully set forth herein its responses to the allegations in paragraphs 1 through 18 of the Complaint.

20.     Lack information and therefore deny.

21.     Lack information and therefore deny.

22.     Lack information and therefore deny.

23.     Deny.

24.     Deny.

25.     Deny.

26.     Deny.

27.     Deny.

## SECOND CLAIM FOR RELIEF

### PATENT INFRINGEMENT-THE '591 D'591 PATENT

28.     Brixley repeats and realleges as if fully set forth herein its responses to the allegations in paragraphs 1 through 27 of the Complaint.

29.     Lack information and therefore deny.

30.     Lack information and therefore deny.

31.     Lack information and therefore deny.

32.    Deny.

33.    Deny.

34.    Deny.

35.    Deny.

## PRAYER FOR RELIEF

36.    Concerning Plaintiff's Prayer for Relief as set forth in the Amended Complaint, Brixley denies that Plaintiff is entitled to any relief on their asserted claims.

## GENERAL DENIAL

37.    Brixley denies any allegation contained in the Complaint not expressly admitted above and specially reserves all affirmative or other defenses that it may have against Plaintiff's allegations.

## AFFIRMATIVE DEFENSES

38.    By alleging the defenses set forth below, Brixley neither agrees nor concedes that it has the burden of proof nor the burden of persuasion for any of these issues. In addition, Brixley specifically and expressly reserves the right to amend its Answer or these defenses, or to add additional defenses, based upon legal theories, facts, and circumstances that may or will be discovered and/or further legal analysis of ~~Plaintiffs~~Plaintiff's positions in this litigation.

## FIRST AFFIRMATIVE DEFENSE

39.    Plaintiff's Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

40.    Plaintiff's claims are barred under one or all of the related doctrines of agreement, laches, acquiescence, estoppel and waiver. Plaintiff and ~~Defendant~~Brixley engaged in communications relating to bag design and design changes in 2021, which communications reasonably led ~~Defendant~~Brixley to believe that Plaintiff would not assert its patent rights against

~~Brixley's~~Brixley's redesigned bag. Plaintiff's communications in 2021 and the subsequent extensive delays in filing suit caused prejudice to ~~Defendant~~Brixley.

~~1.~~41.    Brixley implemented proposed changes detailed in correspondence between ~~Scott Hilton~~Brixley's counsel and ~~James McConkie~~Plaintiff's counsel dated June 15, 2021. These changes included moving the Brixley logo from the bottom right corner of the bag, removing patches with the Brixley logo, moving the Brixley branding on the front of the bag from the bottom right corner, and changes to the zipper.

42.    On June 15, 2021, ~~James McConkie~~Plaintiff's counsel wrote ~~"~~:

>        The idea is that if your client is willing to sell off its existing bags and make the changes suggested on or in connection with any future crossbody bag, the parties can respectively move forward marketing, selling and otherwise using their bags~~." On July 23, 2021, Scott Hilton informed James McConkie, that per Thread's request, Brixley had sold all inventory for the original Brixley bag~~.

43.    On July 23, 2021, Brixley's counsel informed Plaintiff's counsel, that per Plaintiff's request, Brixley had sold all inventory for the original Brixley bag.

44.    On August 11, 2021, ~~James McConkie~~Plaintiff's counsel wrote ~~"we~~:

>        [W]e are in agreement that your client Brixley will change the location of its zipper and logo in all future versions of its ~~crossbody~~cross body bag offering. The bag will also now include loops and a fourth ring on the back of the bag which will further help to distinguish it from the cross body bag offered by Thread Wallets~~."~~.

45.    On September 28, 2021, ~~James McConkie~~Plaintiff's counsel wrote ~~"~~:

>        Just had a look at ~~Brixley's~~Brixley's site. It appears they moved forward on the redesign without a change in the shape of the D rings as proposed by my client~~. . .~~ . . . Given that Brixley has already moved forward and is offering the new bags, I ~~don't~~don't see a need for a written agreement~~."~~.

~~2.~~46.    Given this history, Brixley reasonably understood and believed that it could proceed to market and sell its redesigned bag without concern regarding ~~Thread's~~Plaintiff's overactive infringement imagination. Brixley has been selling its redesigned bag for some years now. If ~~Thread~~Plaintiff had concerns regarding the newly designed Brixley bag, it should have raised those

concerns in September 2021 instead, it did. Instead, Plaintiff represented the opposite  by communicating to Brixley that the new design changes were satisfactory and that Brixley could proceed without fear of harassmentfurther harassment ("I don't see a need for a written agreement"). Further evidence of Plaintiff's counsel's misstatements is set forth in the counterclaims below, and incorporated herein.

### THIRD AFFIRMATIVE DEFENSE

47.    Plaintiff's '105 Patent D'105 patent and '591 PatentD'591 patent are invalid under 35 U.S.C. § 171112 as not originalindefinite, including because of ambiguity and confusion regarding multiple solid lines.



48.    The drawing of the D'105 patent shows lines passing through the zipper teeth. Such linework renders the D'105 patent indefinite and non-enabled under 35 U.S.C. § 112 because it is unclear whether the claimed seam line intersects a functional feature (the zipper) or is merely an ornamental design element (e.g., a surface marking). The drawings, therefore, fail to enable a designer of ordinary skill to practice the invention without undue experimentation.

### FOURTH AFFIRMATIVE DEFENSE

3.49.    Plaintiffs '105 Patent and '591 Patent Plaintiff's D'105 patent, granted on August 15, 2023, and '591 Patentthe D'591 patent, granted on May 7, 2024, are invalid under 35 U.S.C. § 102 as not novel.



Patent Figures:

50.    As shown in the images above, the Tommy Hilfiger Crossbody is clearly anticipating prior art to both the D'105 and D'591 patents.

51.    The Tommy Hilfiger Crossbody qualifies as a *Rosen* reference under *In re Rosen*, 673 F.2d 388 (CCPA 1982), as it is substantially the same as the claimed designs of D'105 and D'591 patents under the "ordinary observer" test. The Tommy Hilfiger Crossbody features: a precision-rounded corner boxy shape, a gusset (side) zipper, a front logo patch symmetrically spaced from the bottom right corner, and three D-rings on the back (two at the top, one at the bottom), matching the D'105 and D'591 patents' design.

52.    On the back panel, the precise geometric silhouette with exactly two small gauge D-

rings at the top corners and exactly one small gauge D-ring at a bottom corner, give the design an overall boxy style, edgy, minimalist, style of bag suited to a skater, a surfer, or an urban tech professional.

53.    Thus, the Tommy Hilfiger Crossbody renders the claimed designs unpatentable under 35 U.S.C. § 102 for lack of novelty. An examiner would have rejected the D'105 patent (and D'591 patent as its continuation) under § 102 if the Tommy Hilfiger Crossbody had been disclosed. Plaintiff's disclaimer of the front zipper and logo patch in the D'591 patent application does not ~~novel~~overcome invalidity, as the core design elements (rectangular shape, gusset zipper, front pocket, and exactly three D-rings on the back) remain substantially similar to the prior art. The USPTO would not have granted the D'105 and D'591 patents had this prior art reference been disclosed, as it anticipates the claimed designs and renders them obvious to a designer of ordinary skill.

## FIFTH AFFIRMATIVE DEFENSE

~~Plaintiffs '105 Patent and '591 Patent are invalid under 35 U.S.C. § 103 as obvious.~~

54.    Plaintiff's D'105 and D'591 patents are invalid under 35 U.S.C. § 103 as obvious. The Tommy Hilfiger Crossbody qualifies as a Rosen reference under *In re Rosen,* 673 F.2d 388 (CCPA 1982), as it is substantially the same as the claimed designs of D'105 and D'591 patents under the "ordinary observer" test. Additionally, the Fjällräven bag also supports an obviousness finding, particularly given that Plaintiff did not timely disclose the bag to the PTO (the bag was eventually disclosed but only after initial findings were made).



55.    The Fjällräven bag features a key ring inside the front pocket, unlike the Tommy Jeans Crossbody's external key ring. A designer of ordinary skill, seeing the Fjällräven photo, would have been motivated to modify the Tommy Hilfiger Crossbody by moving the external key ring inside the front pocket to avoid the key falling off or getting caught on objects, improving functionality while maintaining the overall aesthetic. This combination renders the D'105 and D'591 patent designs obvious under 35 U.S.C. § 103. An examiner would have rejected the D'105 patent (and D'591 patent) under both § 102 and § 103 if both references had been disclosed.

### SIXTH AFFIRMATIVE DEFENSE

56.    The D'105 and D'591 patents are unenforceable due to Plaintiff's inequitable conduct during prosecution.

57.    ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████ Ryan King, CFO of Plaintiff Thread Wallets was the IP liaison through whom IDSs went to Plaintiff's patent counsel and knew of the Fjallraven sling before the D'105 was granted. Plaintiff failed to disclose ████████████████████ to the USPTO during the prosecution of D'105 patent (IDS deadline: August 14, 2023) and D'591 patent (filed July 28, 2023, granted May 7, 2024).

58. ███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████ As an inventor with a duty of candor under 37 CFR § 1.56, Bauer was legally obligated to disclose this known material reference.

59. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

60.    The D'105 patent application became abandoned on December 29, 2020, at 12:00 AM, due to failure to respond to the USPTO's Notice to File Missing Parts (October 28, 2020). The application was thus abandoned and legally defunct until January 21, 2022, when it was revived.

61. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

62. ███████████████████████████████████████████




▮    Post-revival of the abandoned design patent ▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬ from the D'105 patent IDS (February 24, 2022) and D'591 patent

IDS (July 28, 2023), despite its materiality as a *Rosen* reference. His duty of candor (37 CFR § 1.56),

affirmed in his declarations, mandated disclosure.

64.    The abandonment predates Thread's May-to-September 2021 negotiations with

Brixley, where Plaintiff's counsel first fraudulently represented that misrepresented the D'105 patent

application as "pending."

65.    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

66.    Mr. Bauer's failure to include ██████████████████ in the IDS for either patent application further supports the conclusion of intent to deceive. Specifically, Bauer's selective omission of ██████████████, a third-party reference that closely mirrors the claimed designs under the "ordinary observer" test, suggests he deliberately withheld it to avoid a rejection under 35 U.S.C. § 102 or § 103, knowing its disclosure would jeopardize patentability. This calculated decision evidences his specific intent to mislead the examiner.

67.    Plaintiff's employee, Ryan King, as IP liaison, disclosed the Fjällräven bag in an IDS for D'591 patent but not for D'105 patent. Also, the Fjällräven photo was not submitted in the first IDS, only later in a subsequent IDS. This selective disclosure points to a deliberate strategy by Bauer and King to manipulate prosecution. Bauer, as the inventor, and King, as the IP liaison overseeing all patent-related communications, jointly controlled the disclosure process. Specifically, the delay in submitting the Fjällräven photo further supports an intent to deceive, as it minimized the examiner's ability to assess its relevance in combination with other prior art. This pattern reflects Bauer and King's shared intent to both omit and obscure the true scope of prior art, ensuring issuance through misrepresentation.

68.    Additionally, during the D'105 prosecution, Plaintiff submitted only inventor-originated prior art photos, planning to overcome them using the grace period exception under 35 U.S.C. § 102(b)(1), while deliberately withholding the applicant admitted third-party prior art ██████████████ that would have posed a greater risk of rejection. Bauer and Boyes, as co-inventors, intentionally structured the IDS to include only their own prior art, which they could neutralize using the grace period, while excluding ██████████████—a third-party reference not subject to the exception. This tactical choice reveals their specific intent to deceive by presenting a sanitized and false prior art landscape.

69.    Plaintiff's decision to withhold the critical ██████████████ reference, despite their signed declarations affirming their duty of candor, indicates a conscious effort to mislead

the examiner into granting a patent they knew might otherwise be rejected.

70. ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████

71.    Rather than fulfilling his duty to provide a complete record, King deliberately
suppressed this material reference to bolster Plaintiff's litigation position against Brixley, as
evidenced by his competitive explanations for his strategic push for the broader D'591 patent. This
omission, under his direct oversight, reflects a calculated intent to deceive the examiner.

72.    The withheld ██████████████████ was material, as it would have led to a
rejection of the D'105 and D'591 patent applications under 35 U.S.C. § 102 (as a Rosen reference)
and § 103 (in combination with Fjällräven's internal key ring). Its materiality underscores the
deceptive intent of Bauer, Boyes, and King, as its exclusion was a strategic choice to secure issuance.

73. ███████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

74.    The collective decision by Bauer, Boyes, and King to withhold this reference, while
disclosing the less similar Fjällräven bag and timing its submission to dilute its impact, demonstrates
a coordinated effort to mislead the examiner. By pairing this with inventor-originated prior art in
D'105 to exploit the grace period, they crafted a prosecution strategy that deliberately obscured the
prior art landscape.

75.    This sophisticated manipulation, executed by Bauer, Boyes, and King in their respective roles, evidences their specific intent to deceive the USPTO into granting patents they knew were vulnerable to invalidity.

76.    The surprising prosecution history of each patent-in-suit further informs Plaintiff's pattern of misrepresentation. Plaintiff's counsel is probably the largest IP specialty firm in Utah. Plaintiff's counsel holds itself out on the internet and social media as one of the best law firms for design patents. In particular, it advertises "faster time to issuance" and "extremely effective in combatting counterfeits through online marketplace enforcement campaigns."

77.    When Brixley received the demand letter from Plaintiff's counsel, it contacted Brixley's attorney Scott Hilton. After the first meeting with Plaintiff's counsel by phone, Mr. Hilton emailed Ethan O'Connell, husband to Brixley founder and CEO Kimberly O'Connell, to inform Brixley that the call with Plaintiff's counsel had gone well, that Plaintiff wanted to resolve the dispute amicably, and "sounded happy to let [Brixley] sell through [its] existing inventory." Plaintiff's counsel also communicated with Mr. Hilton about modifications that Brixley could make to its bag design.

78.    Brixley took Plaintiff at its word and proceeded to propose and implement many changes, including several new innovations that Ms. O'Connell had envisioned implementing. These included replacing the PVC/leather logos patches with embroidered logos that couldn't peel and at the same time contributing to the entire softer, fashion-forward look of the new design.

79.    On the front panel, Brixley oriented the embroidered logo vertically to match the "fashion BoHo chic" style also evoked by the wide fabric belt loops on the back, a feature normally not found on bags, or even pants, but rather like the jumbo wide loops on a sundress for a playful feminine fashion look.



80.    Brixley even sent confidential photos of its new bag design to Plaintiff's counsel.

81.    After a second phone call with Plaintiff's attorney, Mr. Hilton noted with satisfaction
that Plaintiff's attorneys liked the new look of Ms. O'Connell's transformed crossbody. In particular,
"they like the other changes, including the belt loops, the [embroidered] logo movement [away from
the lower right corner and vertically oriented], and the slightly higher zipper. Hilton continued "but
they still wanted you to consider that last change" e.g., a change to the D-rings.

82.    Unbeknownst to Mr. Hilton and Mr. O'Connell, Plaintiff did not have a pending patent
application on July 14, 2021, when Plaintiff's counsel and Mr. Hilton had the phone call. Through a
series of procedural errors, Plaintiff's patent attorney had allowed the D'105 patent application to go
abandoned on December 29, 2020, by operation of law by neglecting to file the missing parts
indicated in a notice Plaintiff had received 2 months earlier. Two subsequent petitions to revive an

unintentionally abandoned application were both dismissed due to the patent attorney's failure to follow patent office instructions on multiple USPTO communications.

83.    The petition to revive the abandoned D'105 patent application was not granted until January 21, 2022, and the D'105 patent application was not considered complete until June 15, 2022, 600 days after filing, all because of multiple procedural errors that are normally not committed.

84.    Exhibit A provides a more detailed Table 2 showing the prosecution of the D'105 patent application which placed Plaintiff's executives and employees in a position that they were desperate to get a patent.

85.    The relevance to the inequitable conduct of CEO Bauer and CFO King is that Plaintiff knew that the D'105 application was abandoned and yet were negotiating to obtain Brixley confidential information and design change concessions made in good faith knowing all through June until September 28, 2021, when Plaintiff's counsel wrote:

> Just had a look at Brixley's site. It appears they moved forward on the redesign without a change in the shape of the D rings as had been proposed by my client. I'll discuss with my folks and let you know their reaction. Given that Brixley has already moved forward and is offering the new bags, I don't see a need for a written agreement. Thread reserves all rights and will keep an eye on this matter going forward.

86.    Under the circumstances described the omission to disclose that there were no crossbody patents pending from December 20, 2020, until January 21, 2022, constitutes a false statement. Specifically, the initial statement that the patent was pending was false when made. Because Plaintiff knew that Brixley was relying on the representation in the April 22, 2020 demand letter that at least one patent with the three figures represented as coming from a pending design patent application, Plaintiff and its counsel knowingly allowed Brixley to continue under this false belief without correcting it. Plaintiff further knew that Brixley had no available means to verify its representations given the unpublished and confidential status of design patent applications at that time.

87.    As such, this omission amounts to fraudulent misrepresentation. Here, silence or

failure to correct an earlier representation can constitute fraudulent misrepresentation, given the duty to disclose under the circumstances.

88. 

89.    In February 2022, Brixley wanted to make sure that the understanding that their proactive changes had resolved all concerns of future legal actions, Mr. O'Connell emailed Mr. Hilton:

> I just wanted to follow up on the design patent that we filed on our crossbody sling. I remember last time we spoke we talked about how it can take a year to file. Is there anything else we can do or need to do to protect our design? With Thread sending their letter a year ago did we leave off on a page with their lawyer having an understanding that our bag is different and unique to our design. If they end up getting a design patent filed before ours, do they have any ground on reaching back out trying to take legal actions?
>
> From a legal perspective is our design and crossbody different enough to not have to discuss anymore legal actions. I just want to make sure we have done everything we need to do to be successful. We have been having a great year and would hate to have something push us back that we can plan for now.

90.    Mr. Hilton replied:

> To answer your questions on the crossbody sling design, I think the fact
> that we haven't heard anything else from them is a good sign, and they
> likely agree that your new bag doesn't infringe, and that's certainly
> where we left it with their attorney (they seemed appreciative of our
> cooperation and re-design).
>
> There's always a chance, especially if your new design is very popular,
> that they might allege that it infringes their design patent, but I think
> that chance is small based on the differences in your designs.
>
> Your current design patent application covers the current design well,
> there's not much else to do there, but if there are other designs you'd
> like to protect, or a next version of the crossbody sling design, we can
> file additional applications to cover those. We'll let you know as soon
> as we hear back from the USPTO.

91.    In addition to the seventh affirmative defense Unclean Hands, eighth affirmative
defense Failure to Mitigate and corresponding counterclaims Fraudulent Misrepresentation and
Negligent Misrepresentation, Plaintiff engaged in this fraudulent negotiation knowing the D'105
patent was abandoned.  As further detailed below, Plaintiff's conduct was calculated to deceive both
Brixley and the Patent Office in a coercive attempt to gain business advantage through legal threats
rather than lawful market competition.

92.    Other evidence that Thread executives Mr. Bauer and Mr. King, intended to deceive
the USPTO, is shown by:

- o Colby S. Bauer, as CEO and inventor, and Ryan King, as CFO, knew the D'105 patent
    was unlikely to win damages awards due to the changes Plaintiff had fraudulently
    enticed Brixley into making in May 2021 - September 2021 negotiations with Brixley.

- o ███████████████████████████████████████████████
    ███████████████████████████████████████████████
    ██████████████████████████████████████

- o ███████████████████████████████████████████████
    ████████████████████████    while disclosing only the Fjällräven bag in D'591

patent and delaying the submission of its photo, and submitting only inventor-originated prior art in D'105 patent to overcome it with the grace period exception, to maximize the likelihood of D'105 and D'591 patents issuance by distracting the examiner from more material prior art.



93.







o ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

o  Plaintiff's demand letter dated October 5, 2023, "Thread is also aware that Brixley claims to have a pending patent application for its crossbody bag. See https://brixleybags.com/products/crossbody-sling. Any such patent application is problematic because Brixley's crossbody bag was released after Thread's. Accordingly, Thread demands that Brixley abandon any such application."

94.     Further evidence of inequitable conduct exists concerning the D'591 patent application, when it was still pending. In the D'591 application, ████████████████ was also never disclosed. Yet the second demand letter insisted that Brixley abandon Kimberly's new original design implemented during Plaintiff's fraudulent negotiations in June-July 2021. Brixley had already performed in good faith and yet now Plaintiff tried to appropriate Brixley's new design too (e.g., fashionable wide belt loops, embroidered logo, four D-rings, etc.), by demanding that she abandon the Brixley design patent application for her new design.

95.     Brixley's patent USD1019136S1 was granted on March 26, 2024. During the examination, the examiner found and cited "Black Crossbody Bag, available at threadwallets.com, earliest customer review date Apr. 2021 [online]."

96.     Although the prior art date of Plaintiff's crossbody was 2021, Brixley's patent attorney filed an IDS citing "USD995105S12020-10-232023-08-15Thread Wallets LLC Cross-body bag." Patent Practitioners are not required under the duty of candor to cite cumulative prior art. However, the design claim as shown in the Figures of the D'105 patent is substantially different from the design embodied in the Plaintiff's crossbody bags.

97.     The D'105 patent includes a completely flat front panel with no decorative elements

rising above the front panel face. The D'105 patent claims three solid lines on the bottom extending from the back panel to the front panel which appear to be CAD lines not removed from the claim. Similar lines are claimed on the left side, right side, and top. The Brixley design includes no such claimed lines.

98.    Bauer and Boyes as inventors had a duty of candor under 37 CFR § 1.56, which they breached by failing to disclose ███████████████ and by submitting only inventor-originated prior art in the D'105 prosecution to overcome it with the grace period exception.

### SEVENTH AFFIRMATIVE DEFENSE

99.    Plaintiff's claims are barred by the doctrine of unclean hands, as Plaintiff engaged in bad faith by misrepresenting the status of the D'105 patent application during negotiations, claiming the 2021 agreement was invalid, reneging on an apparent agreement by consent that Brixley's redesigned bag did not infringe, and withholding material prior art to secure the patents through deceptive means, including submitting only inventor-originated prior art in the D'105 prosecution to overcome it with the grace period exception while failing to disclose known third-party prior art like ████████████████████████████████

100.    Specifically, email correspondence between Mr. Hilton and Plaintiff's counsel from July 14, 2021, to September 28, 2021, shows Plaintiff's counsel misrepresented the D'105 patent application as having multiple patents pending, despite knowing it was abandoned before his May 21 letter, and the petition to revive was dismissed on September 9, 2021. Plaintiff's counsel's statement on September 28, 2021, that "I don't see a need for a written agreement" further demonstrates bad faith, as Plaintiff later filed this lawsuit despite the agreement.

### EIGHTH AFFIRMATIVE DEFENSE

101.    Plaintiff failed to mitigate any alleged damages by failing to correctly communicate its patent and application status and its apparent position on the agreement with Brixley.

### COUNTERCLAIMS

102.    ~~Defendant and~~ Counterclaim Plaintiff Brixley Bags, LLC ~~("("**Brixley**"),")~~, by and through undersigned counsel, ~~complain~~complains and ~~allege~~alleges the following against Counterclaim Defendant Thread Wallets LLC ~~("("**Thread**"):")~~. These counterclaims expressly incorporate all factual allegations presented in the Defenses.

## JURISDICTION

~~1.~~103.  Jurisdiction is proper in this court under 28 U.S.C. §§ 1331 and 1338 as this case arises out of claims relating to patents, and the Patent Act, 35 U.S.C. § 101 et seq., and supplemental jurisdiction over ~~Brixley's~~Brixley's counterclaims pursuant to 28 U.S.C. § 1367(a) as the counterclaims are so related to ~~Thread's~~Thread's claims that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

~~2.~~104.  Pursuant to 28 U.S.C. §§ 1391(b)(l), 1391(b)(2), and 1400(b), venue is proper in this Court as Thread resides in this judicial district, has brought claims related to alleged infringement in the judicial district.

## PARTIES

~~3.~~105.  Thread is a Utah limited liability company with registration and a principal place of business in the State of Utah.

~~4.~~106.  Brixley is a Utah limited liability company with registration and a principal place of business in Utah and Arizona, respectively.

## FACTS

~~5.~~107.  On ~~or about~~ April 22, 2021, ~~Thread's~~Thread's counsel sent an initial letter advising Brixley of ~~Thread's~~Thread's belief that the Brixley Crossbody Bag was substantially similar to the Thread Crossbody Bag. In that April 2021 correspondence, Thread informed Brixley of its intent to enforce its design patent rights.

6.108. Immediately ~~subsequent to~~after the April 2021 correspondence, Thread and Brixley engaged in ~~numerous~~several email and phone conversations regarding the designs of cross-body bags. While Brixley ~~at the time~~ did not believe that ~~is~~its cross-body bag infringed any valid intellectual property rights, Brixley nonetheless implemented specific design changes as part of these communications. These changes were shown to Thread. Brixley understood that Thread was satisfied with the design changes, including because of ~~Thread's~~Thread's specific communications detailed above, and because Brixley received no further communications from Thread.

7.109. On ~~or about~~ October 5, 2023, over two years after any communication from Thread, Brixley received a letter from counsel for Thread, informing them that the patent application for ~~Thread's~~Thread's cross-body bag has issues as U.S. Pat. No. ~~D995105 ("~~D995,105 ("**the** ~~'105~~**D'105 patent**~~"):~~").

8.110. On November 10, 2023, Brixley responded to ~~Thread's~~Thread's correspondence, indicating that Brixley did not believe that their products infringed the ~~'105~~D'105 patent.

9.111. On December 4, 2023, Thread responded to ~~Brixley's~~Brixley's November 10, 2023 letter by filing its Complaint with this Court.

### ~~COUNT ONE~~
### **(Counterclaim One: Declaratory Judgment of Non-Infringement)**

### (28 U.S.C. §§ 2201, 2202)

~~10.~~ Brixley repeats and realleges the above paragraphs ~~1 through 9 hereof,~~ as if fully set forth

112. herein.

113. ~~As a result of~~ Brixley alleges that the ~~acts described~~Accused Products are plainly dissimilar.

114. The new Brixley design, embodied in the ~~preceding paragraphs, there exists a controversy of sufficient immediacy~~US D1019136S1 patent, features contoured surface shading, fabric belt loops reminiscent of those found in women's fashion, and ~~reality to warrant~~four D-rings

for a fashion friendly backpack way of wearing.

~~11.~~115.        In contrast, the ~~issuance~~overall appearance of Thread's D'105 and D'591

patents has an entirely different decorative appearance. The D'105 and D'591 patents claim a

distinctly boxy, edgy, and minimalist aesthetic that closely align with an accessory suited to a

~~declaratory judgment of non-infringement~~skater, a surfer, or an urban tech professional.

~~12.~~116.        A judicial declaration is necessary and appropriate so that Brixley may

ascertain its rights regarding its Crossbody Bags and the ~~'105 Patent~~D'105 patent and the ~~'591~~

~~Patent~~D'591 patent.

~~13.~~117.          Brixley is entitled to a declaratory judgment that Brixley does not make, use,

sell, offer for sale, or import into the United States, and has not made, used, sold, offered for sale, or

imported into the United States any products or methods that infringe, either directly or indirectly,

any valid and enforceable claims of the ~~'105 Patent~~D'105 patent and the ~~'591 Patent.~~D'591 patent

under ~~36~~ 35U.S.C. § 271.

~~COUNT TWO~~

**Counterclaim Two: (Declaratory Judgment of Invalidity)**

(28 U.S.C. §§ 2201, 2202; 35 U.S.C. §§ 102, 103)

~~14.        Brixley~~ repeats and realleges ~~Paragraphs 1 through 13 hereof,~~the above paragraphs as if
fully set forth

118.     herein.

~~15.~~119.          As a result of the acts described in the preceding paragraphs, there exists a

controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of

invalidity.

~~16.~~120.        A judicial declaration is necessary so that Brixley may ascertain its rights

regarding the validity of the ~~'105 Patent~~D'105 patent and the ~~'591 Patent~~D'591 patent.

~~17.        Brixley~~ is entitled to a declaratory judgment that the claims of the ~~'105 Patent~~D'105

patent and the ~~'591 Patent.~~D'591 patent are invalid for failure to meet the conditions for Patentability set

forth in 35

121.    U.S.C. § 101 et seq., including at least§§ 102, 103, and 112103.


**Counterclaim Three: Violation of Utah Bad Faith Assertions of Patent Infringement Act**

(Utah Code § 78B-6-1901 et seq.)

122.    Brixley repeats and realleges the above paragraphs as if fully set forth herein.

123.    Counter-Defendant Thread and its agents, including counsel, knowingly sent demand letters with multiple factors evidencing bad faith in violation of Utah Code §78B-6-1903 "Distribution of Bad Faith Patent Infringement Letters Act" which for convenience and brevity referred to hereinafter as simply the "Bad Faith Patent Demand Letters Statute"  or the "Statute."

124.    Section (2)(a) of the Statute is a category of factors (i)-(vii) related to demand letters where the sponsor *omits one or more pieces of required information* which *hampers the target's ability to respond* suggesting intent to confuse or deceive a target into taking action without affording the target the information necessary to make an objective evaluation.

125.    Section (2)(b) of the Statute is a category of factors (i)-(vi) where violations are the gravest because they involve active misrepresentation and/or coercion, suggesting deliberate bad faith. Such factors can also be actionable as fraud.

126.    Where active misrepresentation and coercion are combined, a finding of bad faith is even more strongly supported because the combination demonstrates a calculated intent to deceive and intimidate the target, undermining the integrity of the patent enforcement process and exploiting the target's lack of information or resources to resist.

127.    On April 22, 2021, Thread, through its counsel, sent Brixley a demand letter (BRIXLEY 000001) referencing "patents being asserted."  This assertion of infringement of multiple patents by a target creates a greater perception of legal jeopardy to the target.

128.    The fact that Plaintiff's statement "Thread Wallets also has multiple design patents pending on this design and expects those applications to issue in due course" is a misleading

statement within the meaning of Subsection 2(a)(vi).

129.    Thread did not have even one design patent application pending *in the US.* This is because Thread's US Design Patent Application No. 29/764,105 filed on October 23, 2020, was in fact not pending. The United States Patent and Trademark Office (USPTO) issued a Notice to File Missing Parts on October 28, 2020, requiring a reply within two months. No reply was filed, no extensions were obtained, and the application became abandoned on December 29, 2020.

130.    During abandonment (December 29, 2020, to January 22, 2022), the Thread Wallets design patent application was unenforceable. Unlike an issued patent, a pending application doesn't grant enforceable rights (35 U.S.C. § 271 requires infringement of an issued patent). Abandonment goes further: it terminates the application's pendency, leaving no legal basis to assert infringement unless and until a petition to revive an unintentionally abandoned application is granted.

131.    A technically true statement can be misleading if it omits critical context—like the application's abandonment from December 29, 2020, to January 22, 2022.

132.    Thread's letter implied a current threat in the U.S., based on multiple pending design patent applications which was false in effect since no enforceable rights existed in the U.S. on April 22, 2021.

133.    Brixley's reliance on Thread's statement reinforce an inference of bad faith to the extent that Brixley acted on the letter (hiring Scott Hilton, change the design, selling out of its existing bag), all are facts that may indicate that Thread's statement achieved a coercive effect, strengthening the factual support the letter was distributed to Brixley in bad faith. See

134.    The Statute provides a list of mitigating factors that courts may consider "as evidence to mitigate a conclusion that a sponsor has distributed a demand letter containing a bad faith assertion of patent infringement." Under Subsection 3(b) "the demand letter lacks the information described in Subsection (2)(a) and when the target requests the information, the sponsor provides the information within a reasonable period of time."

135.    Complicating the evaluation of mitigation factors under Subsection 3(b) with regard to the April 22, 2021 demand letter and the May 21, 2021 response and clarification letter (BRIXLEY_000005) is fact evidence that by May 26, 2021 Brixley was in reality reasonably relying on the flexible language of the Demand Letter and was making  Specifically, Thread responds "Your references to Utah Code § 78B-6-1903 suggest you may believe Thread Wallets, LLC ("Thread Wallets") is alleging infringement of a registered patent. That is not the case. As we explained, Thread Wallets has filed a patent application covering the design of its crossbody bag but has not received an issued patent on that application." Plaintiff statement, appears intended to mitigate the misleading statement "Thread Wallets also has multiple design patents pending on this design and expects those applications to issue in due course." First, by suggesting that the target Brixley has misunderstood the intent of the April 22, 2021 demand letter and that the April 22, 2021 demand letter makes no assertions of patent infringement. Second, by potentially clarifying that only one pending design patent application is at issue.

136.    However, the statement "suggest [Brixley] may believe Thread Wallets, LLC ("Thread Wallets") is alleging infringement of a registered patent" is counterfactual to the reply letter May 4, 2021 from Brixley's counsel (BRIXLEY_006929) explicitly states "we understand that your client has not yet been granted any patent rights and such potential rights are currently undefined and may never be granted."

137.    At that time, the D'105 application was abandoned and therefore was not pending. By also allowing the six month statutory deadline April 28, 2021 to pass without filing the missing parts and paying the fee for four months extension, an unusual set of circumstance occurred.

**Atypical Set of Circumstances Chronologically Aligned with the Demand Letter.**

138.    An atypical set of circumstances occurred *between* the April 22, 2021 demand letter (BRIXLEY_000001) and the May 21, 2021 response and clarification letter (BRIXLEY_000005).

139.    As of April 29, 2021, the  D'105 patent could only be revived if supported by a

certification under 37 CFR 1.137 that the entire delay was unintentional or unavoidable.

140.    Before the May 21, 2021 response and clarification letter (BRIXLEY_000005) was sent to Brixley, Thread's patent counsel had an opportunity to promptly file the petition to revive the abandoned D'105 patent by merely checking the boxes on form PTO/SB/64 and certifying by his signature and submission of the four-month extension fee and the terminal disclaimer that the delay was entirely unintentional.

141.    Consistent with 37 C.F.R. 1.137 as implemented by the PTO, the Office processes electronically submitted petitions automatically, as the Office relies on the practitioner's duty of candor under 37 CFR 1.56 unless the delay is more than two years.

142.    Where the delay is two years or more "The Director of the USPTO may require additional information where there is a question whether the delay was unintentional. In particular, any applicant filing a petition to revive an abandoned application more than two years after the date of abandonment must provide additional explanation of the circumstances surrounding the delay that establishes that the entire delay was unintentional." MPEP 711.03(c)

143.    The demand letter (BRIXLEY_000001) shows that the abandoned D'105 patent was already the subject of the April 22, 2021 demand letter (BRIXLEY_000001) and the subject of the May 21, 2021 response and clarification letter (BRIXLEY_000005). Design patent prosecution histories are not publicly available until after the patent is granted. Although no additional information is required, the expectation that practitioners will uphold their duty of candor and good faith under 37 CFR 1.56, is effectively reinforced by the laws governing certification of materials submitted to the USPTO as explained in The Manual of Patent Examining Procedure (MPEP) 410 which references 18 U.S.C. § 1001 as the governing criminal statute for false representations to the USPTO (MPEP 410).

144.    As the D'105 Image File Wrapper shows, Plaintiff's counsel did not file the petition until after Thread had received the official Notice of Abandonment on June 30, 2021. Plaintiff's

patent attorney submitted the ePetition on July 20, 2021 and checked the boxes on form PTO/SB/64 thus certifying by his signature on the form together with submission of the four-month extension fee and the terminal disclaimer that the entire delay from December 29, 2020 until the submission of a grantable petition was unintentional.  The facts regarding the specific dates and nature of the first petition to revive are detailed in Exhibit A at rows J-N and are confirmable in the IFW for the D'105 patent application.

145.    As documented in the IFW and in Exhibit A at row M, consistent with 37 C.F.R. 1.137 as implemented by the PTO, Plaintiff's patent attorney submitted the ePetition form without the need for any additional information.

146.    On September 18, 2021, Plaintiff's litigation attorney leading the negotiations with Brixley emailed "Scott, Putting this back on your radar. Will you let me know where your client is on this so we can get it wrapped up?"

147.    On September 21, 2021, Plaintiff received the petition decision: **dismissed.**

148.    The atypical set of circumstances which had earlier been chronologically aligned with the demand letter and the response and clarification letter had now become chronologically aligned with wrapping up stages of the negotiations between Thread and Brixley.

149.    September 28, 2021 9:54 AM Plaintiff litigation counsel emailed

> Scott, Haven't heard from you. I would appreciate it if you would let me know your client's plans. If they don't intend to follow through on what we have discussed,  I need to advise my client accordingly. (BRIXLEY_000352).

150.    Five minutes later, Plaintiff litigation counsel sent an additional email

`        Scott,

> Just had a look at Brixley's site. It appears they moved forward on the redesign without a change in the shape of the D rings as had been proposed by my client. I'll discuss with my folks and let you know their reaction. Given that Brixley has already moved forward and is offering the new bags, I don't see a need for a written agreement. Thread reserves all rights and will keep an eye on this matter going forward.

151.    Within the hour, at 10:56 AM, Brixley's attorney responded

Thank you for the update, James. You're right, it looks like they are available for preorder, I'll check with our client on that. I| do know that Brixley had extended discussions with their manufacturer on the other ring shapes we discussed, and their manufacturer only deals with D rings for functional reasons, the ability to attach the flat side to the bag and the range of motion for the clip on the rounded side. Other shapes of rings weren't an option with their manufacturer. Hopefully the other design changes are satisfactory to your client, we understand that they will keep an eye on the matter moving forward.

152.    Plaintiff's attorney responded promptly at 10:58 AM.

Scott, Thanks for the follow up. I'll pass it along to my client. Appreciate your work on this matter.

153.    As shown in Exhibit A – Table 2 row O, Plaintiff ceased to communicate with Brixley until October 5, 2023.

154.    On October 5, 2023, Plaintiff sent a second demand letter with an attached draft complaint. (BRIXLEY_000366 – BRIXLEY_000402.)

155.    Details of Brixley's reasonable reliance during the period of silence on the assurances of Plaintiff's counsel are set forth in emails between Brixley's attorney and Brixley (BRIXLEY_008847 – BRIXLEY_008848) which are summarized in part in Exhibit A – Table 2 row Q

156.    In the second demand letter, the patent number was D995,105 was clearly identified and a complete copy of the granted patent publication was included.

157.    As noted in Exhibit A – Table 2 row R, Plaintiff's patent attorney filed a third petition to revive, stating among other things

Design patent application serial no. 29/756,002 was unintentionally abandoned due to failure to reply to the Notice to File Missing Parts mailed October 28, 2021. The Application  Data Sheet filed October 23, 2021 was not properly signed. A Corrected Application Data Sheet was  filed October 28, 2021 but were not made aware it was not accepted  until the Notice of  Abandonment issued June 30, 2021. Applicant  thanks for the Office of Petitions for explaining  the necessary filings.

158.    Consistent with Office policy, Plaintiff's statement that "A Corrected Application Data Sheet was filed October 28, 2021 but were not made aware it was not accepted until the Notice of Abandonment issued June 30, 2021" was accepted without the Office requesting additional information as the entire delay from the Dec 29, 2020 abandonment to the filing of the grantable petition was period of abandonment was slightly less than one year.

159.    Brixley received no communications clarifying the status of the D'105 during the negotiations in 2021.

160.    The design patent infringement assertions reliance on an abandoned application fits (2)(b)(iii) and (iv)—serious violations where affirmative representations are misleading and therefore false in effect.

161.    Reinforcing the inference that Thread intended to coerce Brixley is the demand that Brixley respond by May 5, 2021, and the statement that "Thread Wallets will not hesitate to enforce its rights." This short deadline, coupled with the misrepresentation of the patent status, violated Utah Code §78B-6-1903(2)(b)(vii) ("the demand letter demands …[a] response within an unreasonably short period of time depending on the number and complexity of the claims"), another violation falling within the statute's most serious category (2)(b) of active misrepresentation and coercion.

162.    Because providing any patent figures or clarifying whether Thread was alleging trade dress, in the response and clarification letter (BRIXLEY_000005), Thread stated that "the scope of the patent may change during prosecution,"

163.    Thread continued to suggest that enforceable rights would issue, stating "if or when Thread Wallets' patent application issues" (BRIXLEY_006947). This statement violated Utah Code §78B-6-1903(2)(b)(vi) ("a false or misleading statement") and which is within the statute's most serious category of violations. Legislators identified such false or misleading statements as the most serious because they unfairly pressure businesses into settlements or redesigns based on nonexistent

rights.

164.    Both the April 22, 2021 demand letter and the October 5, 2023 correspondence violate the Act.

165.    As a result of Plaintiff's' bad faith conduct, Brixley has incurred attorney fees and costs resulting from the bad faith assertion and fraudulent negotiations, which already exceed $500,000. Brixley seeks recovery of:

(a) Actual damages, including but not limited to attorney fees and costs in excess of $500,000;

(b) Statutory damages under Utah Code §78B-6-1904(2)(b), including an award of three times the amount of actual damages, attorney fees, and costs. An award of three times actual damages, attorney fees, and costs is justified because Thread's conduct falls within the most serious category of violations under Utah Code §78B-6-1903(2)(b), including making false or misleading statements and demanding a response within an unreasonably short period of time. Thread knowingly and intentionally asserted nonexistent patent rights, continued to threaten enforcement even after abandonment was identified, and used its counsel's reputation and friendly phone calls to mislead Brixley into redesigning its product.

166.    After more than two years of silence, on October 5, 2023, Thread's  new litigation counsel sent a third demand letter to Brixley asserting infringement of U.S. Patent No. D995,105 and demanding that Brixley "cease selling" its redesigned crossbody bag immediately and threatening that "Thread is prepared to pursue all available remedies against Brixley, including filing the enclosed complaint".

167.    The October 5, 2023 letter also asserted that "an ordinary observer would clearly find the two designs to be substantially similar" despite the numerous good-faith redesign changes Brixley had made and have been all good based on prior communications with Thread's former counsel.

168.    Further, the October 5, 2021 demand letter demanded that "Brixley abandon any such

[design patent] application" relating to Brixley's own independent design improvements, an action intended to eliminate competition and allow Thread to appropriate Brixley's belt loop and fourth D-ring design features without licensing or negotiation.

169.    Plaintiff's' conduct constitutes an ongoing bad faith assertion of patent infringement, fraudulently inducing reliance through misleading assurances, strategic silence, and later aggressive assertions inconsistent with prior representations.

170.    Plaintiff's October 5, 2023 demand letter was sent to Brixley with the approval of Thread's CEO and Inventor and the CFO acting as IP liaison.  They knew that the D'105 application advanced through prosecution without disclosure of material prior art. (BRIXLEY_000366-375). Under Utah Code §78B-6-1903(2)(b)(vi), knowingly making a "false or misleading statement" in a demand letter constitutes one of the most serious forms of bad faith. Thread misrepresented the strength and enforceability of the D'105 patent in its October 5, 2023 letter.

171.    Plaintiff's same leaders: CEO and Inventor and the CFO acting as IP liaison, also owed a duty of candor to the USPTO under 37 C.F.R. § 1.56. Despite this duty, they knowingly withheld photos of ███████████████ and the Fjällräven Sling from the examiner, submitting only photos of Thread's own products.

172.    If Thread had disclosed the ███████████████ and the Fjällräven Sling, the D'105 application would have been rejected as anticipated by the ███████████████ and rendered obvious by the ███████████████ in view of the Fjällräven Sling.

173.    Asserting a patent procured through inequitable conduct and failing to disclose that material information while simultaneously demanding abandonment of Brixley's application, further violated Utah Code §78B-6-1903(2)(b)(vi) (false or misleading statement) and (iv) (assertion of rights the sponsor does not properly own or have the right to enforce).

174.    As a result of Thread's escalating bad faith conduct, Brixley is entitled to actual damages, attorney fees and costs exceeding $500,000, treble damages under Utah Code §78B-6-1904, punitive damages, and all other relief deemed appropriate by the Court. An award of three times

actual damages, attorney fees, and costs is particularly justified given the intentional, knowing, and egregious nature of Plaintiff's false assertions, misuse of legal processes, and attempts to suppress competition through fraudulently obtained intellectual property rights and coercive demands contrary to law.

### Counterclaim Four: Fraudulent Misrepresentation

175.    Counter-Defendant Thread and its agents including counsel knowingly deceived Counterclaim Plaintiff Brixley.

176.    Thread through counsel falsely represented the status of the D'105 patent application as pending or active during its abandonment period (December 29, 2020, to January 21, 2022), inducing Brixley into a sham settlement agreement, causing Brixley significant direct, and consequential damages including incurring more than $500,000 in legal fees. Thread's counsel later reinforced this fraud with a second demand letter after more than two years of silence shortly after the D'105 patent was granted through the inequitable conduct of CEO Bauer, designer and inventor and CFO King, IP liaison with Thread's counsel causing Brixley additional damages by disrupting Brixley operations.

177.    April 22, 2021, Thread's counsel misleadingly stated in the demand letter to Brixley "Thread Wallets also has multiple design patents pending on this design and expects those applications to issue in due course." (BRIXLEY_000001). The misleading characteristics of using the term "multiple" became evidence by the fact that Mr. Hilton responded to the demand letter, asking for pictures from the pending applications. (BRIXLEY_000404). Furthermore, the pending status was misleading on December 29, 2020, when the D'105 patent became abandoned by operation of law due to Thread's patent prosecution attorney not filing the missing parts.

178.    Thread's patent prosecution counsel did not file the petition until after receiving the Notice of Abandonment and then filed two petitions to revive an abandoned application based on the attorney's certifications that the entire delay from the notice of abandonment until filing a grantable petition was unintentional,. Those two petitions were both dismissed due to the attorney failing to

follow the instructions indicated in the prior PTO communications. Thread's counsel's knowledge of the abandonment before writing the May 21 letter is evident from the fact that from then on, he replaced the word "pending" with other words that implied the same thing. "As we explained, Thread Wallets has filed a patent application covering the design of its crossbody bag but has not received an issued patent on that application" (BRIXLEY_000362).

179.    July 14, 2021, Mr. Hilton emailed Thread's counsel, stating, "This prototype design does appear to be substantially different than your client's design, and we'd like to discuss with you whether it might be sufficiently distinct to satisfy *your client* with regard to ***their pending IP.***" (BRIXLEY_000254, emphasis added). The prototype photos are below, let me know when you'd like to discuss"; Thread's counsel replied, "Thanks, I will discuss with my client and get back to you promptly."

180.    Throughout the summer, Brixley continued performing the conditions discussed for the agreement by selling through the original Crossbody and seeking the prompt response promised by Thread's counsel. Brixley was out of inventory and communicated the urgency through counsel.

181.    On August 11, 2021, Thread's counsel apologized for not responding to Brixley's urgent requests for confirmation that an agreement had been reached by saying that "[v]acation schedules got in the way." (BRIXLEY_000304). He then again asked for more concessions and suggested a simple letter agreement to memorialize the agreement. Plaintiff's counsel concluded the communication by saying, "Please pass along our thanks to your client for promptly selling through their existing inventory and making these changes to their crossbody bag. We appreciate the professional and thoughtful resolution of this matter." (BRIXLEY_000304).

182.    On September 28, 2021, Thread's counsel emailed Mr. Hilton, stating, "Just had a look at Brixley's site. It appears they moved forward on the redesign . . . I don't see a need for a written agreement. Thread reserves all rights and will keep an eye on this matter going forward." (BRIXLEY_000336). This was approximately 273 days into abandonment. Specifically, the D'105 patent application became abandoned on December 29, 2020, following Plaintiff's failure to respond

to a Notice to File Missing Parts issued on October 28, 2020, and did not regain pending status until January 21, 2022, after the USPTO granted a petition to revive.

183.    On October 5, 2023, after more than two years of silence (September 28, 2021, to October 5, 2023), Thread's counsel sent a demand letter to Mr. Hilton, stating, "Brixley was formerly notified of Thread's pending design patent application . . . That patent has now issued as U.S. Pat. No. D995105" and demanded that Brixley cease sales and abandon its patent (Page 10). (BRIXLEY_000366-375).

184.    Thread's counsel's April 22, 2021, claim of "multiple design patents pending" was misleading (BRIXLEY_000001). First, in the US, only the application for the D'105 patent existed initially and it was abandoned  December29, 2020. On May 21, 2021, Thread's counsel changed his language to "filed a patent application . . . not received an issued patent," avoiding the word "pending" in view of the fact that the D'105 application had been abandoned on December 29, 2020, showing intent to deceive rather than correct. (BRIXLEY_000005). This is evidenced by Thread's CFO Ryan King's update to Thread's internal team: "I just know that Ryan tells us that patents have been filed" (England Deposition, Page 46, Line 7).

185.    On July 14, 2021, Thread's counsel's response to Hilton's "pending IP" continued to imply an active application, even though no application existed. (BRIXLEY_000270). This communication prompted Brixley to sell inventory by July 23, 2021, and submit prototypes.

186.    Thread and its agents knew the D'105 was abandoned by June 30, 2021 (Page 21), and counsel's communications were calculated to mislead Brixley into believing Thread had active IP, intending reliance without correction ("no need for a written agreement"). And yet Thread's leadership, including Bauer and King, intended to sue Brixley all along, as shown via internal correspondence produced in discovery in this matter.

187.    Brixley reasonably relied on Thread's counsel's misrepresentations, believing Thread had pending IP, as confirmed by Hilton's July 14 "pending IP" email. Design patent applications are confidential until grant (35 U.S.C. § 122), unlike real property cases (e.g., Dugan v. Jones, 615 P.2d

1239 (Utah 1980)), leaving Brixley unable to independently verify the veracity of these representations until August 15, 2023, making reliance justifiable.

188.    Counter-Defendants and their counsel knew the application's status.

189.    

190.

191.    Brixley justifiably relied on the representation, selling through their existing inventory by July 23, 2021, and implementing design changes, including adding a fourth D-ring, belt loops, and adjusting the zipper and logo placement, as confirmed in email correspondence between Scott Hilton and Thread's counsel.

WHEREFORE, Brixley Bags, LLC respectfully requests that the Court enter judgement judgment in its favor and against Plaintiff Thread Wallets LLC as follows:

~~Adjudging~~(a) A declaratory judgment that Brixley ~~has~~does not ~~infringed~~infringe the D'105 and ~~is not infringing, either directly or indirectly, any valid~~D'591 patents;

~~1.~~    (b) A declaratory judgment that the D'105 and ~~enforceable claim of the '105 Patent and the '591 Patent, in violation of~~D'591 patents are invalid under 35 U.S.C. ~~§ 271~~§§ 102 and 103;

~~2.    Adjudging that each of the claims of the '105 Patent and the '591 Patent is invalid;~~

~~3.    Adjudging~~(c) A declaration that the ~~'105 Patent~~D'105 and ~~the '591 Patent~~D'591 patents are unenforceable~~.~~ due to inequitable conduct;

~~4.    A judgment that Thread and each of its officers, directors, agents, counsel, servants, employees, and all of persons in active concert or participation with any of them, be restrained and enjoined from alleging, representing, or otherwise stating that Brixley infringes any claims of the '105 Patent and the '591 Patent or from instituting or initiating any action or~~

proceeding alleging infringement of any claims of the '105 Patent and the '591 Patent against Brixley or any customers, manufacturers, users, importers, or sellers of Brixley's products;

~~Declaring Brixley as the prevailing party and this case as exceptional, and awarding Brixley its reasonable attorneys' fees.~~(d) An award of actual damages in an amount to be determined at trial, including but not limited to attorney's fees and costs under the Utah Bad Faith Demand Letters Act, Utah Code § 78B-6-1901 et seq.;

(e) An award of treble damages pursuant to Utah Code § 78B-6-1904(2)(b);

(f) An award of punitive damages as permitted by law;

~~5.~~   (g) A declaration that this case is exceptional under 35 U.S.C. § 285 and an award of Brixley's reasonable attorneys' fees and costs incurred in defending against Plaintiff's claims;

~~6.      That Thread be ordered to pay all fees, expenses, and costs associated with this action; and~~

~~Awarding such~~(h) An award of pre- and post-judgment interest;

~~7.~~   (i) Such other and further relief as ~~this~~the Court deems just and proper.

## **CONCLUSION**

Brixley demands a trial by jury on all issues so triable.

DATED: ~~June 20, 2024~~April 26, 2025.          Respectfully submitted,

KUNZLER BEAN & ADAMSON

/s

Chad S. Pehrson ~~Chad S. Pehrson~~
Thomas D. Briscoe
Bryan B. Todd
~~Attorney~~Attorneys for
~~Defendants~~Defendant
and Counterclaim Plaintiff

_____

## EXHIBIT A

Table 2 - Detailed Timeline of Events Related to the D'105 Abandonment
Spanning all Negotiations With Brixley In 2021

|  | Event Date | Status | Event Description |
|---|---|---|---|
| A | 10/23/20 | Pending | Plaintiff files the D'105 patent application with avoidable errors: improper S-signature, POA not accepted due to ADS correctly listing Applicant company as Thread Wallets LLC with no comma and POA incorrectly listing company as Thread Wallets, LLC with a comma. |
| B | 10/28/20 | Pending | Plaintiff receives a Notice to File Missing Parts citing improper S-signature. Filing receipt lists inventors as applicants because of discrepancy in company name on ADS vs POA. |
| C | 12/29/20 | **NOT PENDING (Abandoned)** | Plaintiff's **sole** design patent application for a Cross-body bag is abandoned for failure to respond to the Notice to File Missing Parts. Thus, the application is **not pending**. |
| G | 4/22/21 | **NOT PENDING** | In **Plaintiff's demand letter** to **Brixley, Plaintiff's counsel incorrectly or misleadingly states,** "Thread Wallets has *multiple design patents pending* on this design and expects *those application*s to issue in due course." |
| H | 4/29/21 | **NOT PENDING** | Plaintiff allows **6-month** deadline **04/28/21** to pass without filing missing parts together with a petition and fee for a four-month extension. |
| I | 5/4/21 | **NOT PENDING** | **Brixley's Attorney Scott Hilton** writes to **Plaintiff's counsel,** "While the letter does mention '**multiple design patents pending**' the scope of those design patent application is not disclosed." <br><br> Hilton points out, "A demand letter alleging patent infringement but lacking '**the patent numbers** of the patent or **patents being asserted**' is the first factor indicating a **bad faith assertion of patent rights in Utah Code §78B-6-1903**, the Distribution of Bad Faith Patent Infringement Letters Act. While we understand that your client has not yet been granted any patent rights and such potential rights are currently undefined and may never be granted, at a minimum, copies of the **pending patent applications** or the figures indicating potential claim scope would at least provide some basis for your client's premature allegations, allowing Brixley Bags to at least tentatively "assess the merits of the assertion of patent infringement" pursuant to Utah Code §78B-6-1903 at this early stage, prior to any actual patent rights being granted. |

| J | 5/4/21 | NOT PENDING | Plaintiff's counsel responds to Hilton, "We will take a look and get back to you promptly. " |
|---|---|---|---|
| K | 5/21/21 | NOT PENDING | 17 days later after "taking a look" in more detail at the D'105 patent prosecution file, Plaintiff's counsel sends a letter (BRIXLEY_000005) which appears intended to clarify the ea"Thread has multiple design patents pending" to avoid the consequences of a bad faith assertion of patent rights set forth in Utah Code §78B-6-1903. |
| L | 6/30/21 | NOT PENDING | Plaintiff receives Notice of Abandonment [failure to reply to the October 28 Notice to File Missing Parts]. Plaintiff's failure to file the missing parts and the request and fee for 4 month extension do not change the fact that the D'105 patent application has not been pending by operation of law for more than 6 months. |
| M | 7/20/21 | NOT PENDING | Plaintiff files first petition to revive the abandoned D'105 patent application but fails to include a terminal disclaimer and the required fee as specified in the procedures listed in the Notice of Abandonment. |
| N | 9/21/21 | NOT PENDING | Plaintiff receives petition decision: dismissed because Plaintiff failed to include an acceptable Terminal Disclaimer due to a discrepancy in the legal name of the applicant on the original POA (Thread Wallets, LLC) with a comma and the name of the Applicant listed on the Application Data Sheet (Thread Wallets LLC) which had not been rectified earlier when Plaintiff receive notice issues with the POA. |
| O | 9/28/21 | NOT PENDING | Plaintiff's litigation counsel may have been concerned about formalizing a written agreement based on the representation in the  May 21, 2021 response and clarification letter (BRIXLEY_000005) that references Threads pending application. Plaintiff's counsel email Brixley's counsel "I don't see a need for a written agreement" |
| P | 10/11/21 | NOT PENDING | Plaintiff files a renewed petition to revive abandoned D'105 patent application with Terminal disclaimer and Fee but fails again to read instructions from earlier Notices rejecting the filings because of a comma "Thread Wallets, LLC" on the POA and without a comma in the ADS "Thread Wallets LLC" |
| Q | 11/4/21 | NOT PENDING | Plaintiff receives petition decision: Dismissed because Plaintiff failed to address the corporate name discrepancy. |
| R | 11/19/21 | NOT PENDING | Plaintiff files an additional petition with an assignment recordation showing "Thread Wallets LLC" as the recorded assignee. |
| R | 1/24/21 | pending | PTO Office of Petitions reviews the terminal disclaimer, accepts Plaintiff's statement that the entire delay was unintentional based on PTO policy. Plaintiff receives petition decision: Granted |

| S | 2/24/21 | pending | Plaintiff files IDS with four Thread Facebook images, 1 Thread video. |
|---|---------|---------|----------------------------------------------------------------------|
|   |         |         | ████████████████████████████████████ |
| Q | 3/1/22 | pending | Brixley's attorney Hilton sends a privileged communication to Ethan O'Connell, "To answer your questions on the crossbody sling design, I think the fact that we haven't heard anything else from them is a good sign, and they likely agree that your new bag doesn't infringe, and that's certainly where we left it with their attorney (they seemed appreciative of our cooperation and re-design). There's always a chance, especially if your new design is very popular, that they might allege that it infringes their design patent, but I think that chance is small based on the differences in your designs. Your current design patent application covers the current [differentiated] design well, [e.g., fashion width belt loops, embroidered logo, 4 D-rings] there's not much else to do there." |
| R | 6/15/22 | pending | Plaintiff can see at USPTO: Application is Now Complete. Plaintiff received updated filing receipt showing Applicant "Thread Wallets LLC." |
| S | 7/28/23 | D'105 pending D'591 pending | Plaintiff implements a unanimous plan of its executive team to broaden their patent rights in a continuation application to better assert against Brixley (since D'105 patent claims logo patch and front zipper). |
| T | 8/14/23 | 1 day before grant | ████████████████████████████████████ |
| U | 10/5/23 | D'105 granted D'591 pending | Plaintiff sends second demand letter alleging infringement of the D'105 patent by Brixley new crossbody bag design during the negotiations that occurred during the period of abandonment. |
| V | 12/24/23 | D'591 pending | Plaintiff files lawsuit alleging Brixley's new design infringes D'105 patent despite representations by Plaintiff's previous litigation counsel. |
| W | 5/6/24 | D'591 | ████████████████████████████████████ They commit a separate instance with the Fjällräven reference. |