David P. Johnson (#13260)
djohnson@wnlaw.com
Brittany Frandsen (#16051)
bfrandsen@wnlaw.com
WORKMAN NYDEGGER
60 E. South Temple, Suite 1000
Salt Lake City, Utah 84111
Tel. 801-533-9800

*Attorneys for Plaintiff*
*THREAD WALLETS LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| THREAD WALLETS LLC, a Utah limited liability company,<br><br>            Plaintiff,<br><br>    v.<br><br>BRIXLEY BAGS, LLC, a Utah limited liability company,<br><br>            Defendant. | Civil Action No.: 2:23-cv-00874-JNP-JCB<br><br>**THREAD WALLETS LLC'S MEMORANDUM IN OPPOSITION TO BRIXLEY BAGS, LLC'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND AMENDED COUNTER-CLAIMS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ............................................................................2

        A.      Thread and Its Intellectual Property..........................................................2

        B.      Brixley and Its Crossbody Bag .................................................................3

        C.      Brixley's V2 Bag Goes Viral. ...................................................................7

III.    ARGUMENT.......................................................................................................7

        A.      Brixley's New Affirmative Defenses and New Counterclaims Are Unduly Delayed, Untimely, and Prejudicial Under Rules 15 and 16. .................8

        B.      Brixley's Amended Answer is Futile and Unsupported by Fact or Law. ..............12

                1.      Brixley's Inequitable Conduct Defense Fails Because Brixley Does Not Adequately Allege Intent to Deceive the USPTO. ............................12

                        a)      a. Brixley Fails to Identify Any Individual Who Knew of the Tommy Hilfiger Reference and Deliberately Withheld It During Prosecution......................................14

                        b)      The Fjallraven Reference is Irrelevant to Inequitable Conduct Under Federal Circuit Precedent. ....................................15

                2.      Brixley's Failure to Mitigate Defense is Futile Because Thread Filed Suit Within Months of the Issuance of the '105 Patent. ..................16

                3.      Brixley's Bad Faith Assertion of Patent Infringement Act Counterclaim Fails Under the Plain Language of the Statute....................16

                        a)      The Act Only Encompasses Letters Alleging Infringement..........17

                        b)      The Communications Brixley Relies on Fall Outside the Scope of the Act......................................18

                        c)      Brixley's Allegations Regarding the October 2023 Letter Are Preempted Because Brixley Fails to Allege that Thread's Allegations Were "Objectively Baseless." ....................19

                4.      Brixley   Has   Not   Pled   its   Fraudulent   Misrepresentation

Counterclaim With Particularity And Cannot Do So. .............................20

IV.    CONCLUSION.................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atwood v. Dotdash Meredith Inc.*,
  No. 1:24-CV-00046-TC-DAO, 2025 WL 815118 (D. Utah Mar. 13, 2025)..........................17

*Baker v. City of Loveland*,
  686 F. App'x 619 (10th Cir. 2017) .......................................................................8

*Birch v. Polaris Indus., Inc.*,
  812 F.3d 1238 (10th Cir. 2015) ........................................................................10

*Boydstun Equip. Mfg., LLC v. Cottrell, Inc.*,
  No. 3:16-CV-790-SI, 2017 WL 4803938 (D. Or. Oct. 24, 2017)..............................19

*Bradley v. Val-Mehias*,
  379 F.3d 892 (10th Cir. 2004) .........................................................................12

*C.R. Bard, INC. v. Med. Components, Inc.*,
  No. 2:17-CV-754 TS, 2019 WL 1746309 (D. Utah Apr. 18, 2019).................................13, 14

*ClearOne, Inc. v. RSM US LLP*,
  No. 2:16-CV-00736-DN, 2017 WL 923949 (D. Utah Mar. 6, 2017) .....................................21

*Delano Farms Co. v. California Table Grape Comm'n*,
  655 F.3d 1337 (Fed. Cir. 2011)........................................................................13

*Doe v. Intermountain Healthcare, Inc.*,
  Case No. 2:18-cv-00807, 2020 WL 6743256 (D. Utah Nov. 17, 2020)..................................9

*Dugan v. Jones*,
  615 P.2d 1239 (Utah 1980)...........................................................................20

*Exergen v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009).....................................................................13, 15

*Frank v. U.S. West*,
  3 F.3d 1357 (10th Cir.1993) .........................................................................11

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*,
  328 F.3d 374 (7th Cir. 2003) ..........................................................................8

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
  362 F.3d 1367 (Fed. Cir. 2004).....................................................................19, 20

*Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*,
771 F.3d 1230 (10th Cir. 2014) ........................................................9

*Jacobsen v. Deseret Book Co.*,
287 F.3d 936 (10th Cir. 2002) ...................................................4, 5, 6

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
863 F.2d 867 (Fed. Cir. 1988)........................................................16

*Landmark Tech., LLC v. Azure Farms, Inc.*,
No. 3:18-CV-1568-JR, 2020 WL 1430088 (D. Or. Mar. 24, 2020) ......................20

*Mann v. Boatright*,
477 F.3d 1140 (10th Cir. 2007) ........................................................8

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) ........................................................8

*Minter v. Prime Equip. Co.*,
451 F.3d 1196 (10th Cir. 2006) ...............................................9, 11, 12

*Tesone v. Empire Marketing Strategies*,
942 F.3d 979 (10th Cir. 2019) ........................................................9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) (en banc)...........................................13

**Statutes**

35 U.S.C. § 112.............................................................................9

35 U.S.C. § 171.............................................................................9

35 U.S.C. § 271 ....................................................................... *passim*

Utah Code § 78B-6-1901 *et seq.*........................................................8

Utah Code § 78B-6-1902(1)(a)......................................................17, 18

Utah Code § 78B-6-1902(1)(b).......................................................17, 18

Utah Code § 78B-6-1903 ............................................................5, 19

Utah Code § 78B-6-1903(1) ...........................................................17

Utah Code § 78B-6-1904(1) ...........................................................17

**Other Authorities**

Fed. R. Civ. P. Rule 8 .............................................................................................8

Fed. R. Civ. P. Rule 8(a) ........................................................................................8

Fed. R. Civ. P. Rule 8(a)(2) ...................................................................................8

Fed. R. Civ. P. Rule 9 ......................................................................................20, 22

Fed. R. Civ. P. Rule 9(b).................................................................................13, 20

Fed. R. Civ. P. Rule 15 ....................................................................................11, 12

Fed. R. Civ. P. Rule 16 .........................................................................................11

Fed. R. Civ. P. Rule 16(b)(4) .................................................................................9

Plaintiff Thread Wallets LLC ("Thread") submits this memorandum in opposition to Brixley Bags LLC's ("Brixley") Motion for Leave to File an Amended Answer to First Amended Complaint and Amended Counterclaims (Dkt. No. 58) ("the Motion").

## I.    INTRODUCTION

This dispute dates back to 2020, when Brixley began advertising a near-carbon copy of Thread's new crossbody bag. In 2021, Thread notified Brixley that it had filed a patent application and of the similarities between the parties' crossbody bags, advising Brixley that confusion between the parties' products "would not be beneficial to either company." Brixley promptly modified its bag but declined to make all the design changes requested by Thread. Because Thread's patent had not yet issued, the parties parted ways with no formal agreement and the mutual understanding that Thread would "keep an eye" on Brixley.

Thread's patent application temporarily went abandoned during the 2021 discussions. Thread promptly petitioned to revive it, and the application eventually issued as one of the patents at issue in this action. The temporary abandonment has been public knowledge since August 2023 when the patent issued. Nevertheless, after more than 16 months of litigation and more than 5 months after the deadline to amend pleadings, Brixley now comes to the Court seeking leave to file two new counterclaims based on that abandonment. Essentially, Brixley argues that all of Thread's 2021 representations were "hollow," that Thread hoodwinked Brixley into changing the design of its crossbody bag, and that Thread is now liable for all of Brixley's attorney's fees incurred from 2021 until now. Brixley's two new counterclaims fail both procedurally and substantively. The counterclaims fail procedurally because Brixley waited too long to bring them. The counterclaims fail substantively because they are preempted by Federal law and are not pleaded with sufficient specificity.

Brixley also seeks to add new affirmative defenses of indefiniteness, inequitable conduct, unclean hands, and failure to mitigate. Brixley's indefiniteness defense is based entirely on the patent figures, which have been available to Brixley since the patents issued. With respect to inequitable conduct and unclean hands, Brixley alleges that simply because a reference was in one of the inventor's design files, Brixley can infer both that Thread deliberately withheld the reference from the patent office and that Thread's attorneys participated in the coverup. Neither of those contentions pass muster. Inequitable conduct is a very serious allegation, and a plaintiff must meet an extremely high bar to plead it. Case law is clear that the existence of a reference in an inventor's design files, by itself, does not establish the requisite intent. Rather, even at the pleading stage, intent to deceive can only be inferred when the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO. That is far from the case here. The Court should deny Brixley's request to add its new affirmative defenses.

## II.    FACTUAL BACKGROUND

Rather than address each of the 191 paragraphs in the Amended Answer, this section provides a brief history intended to give the Court the necessary background to understand and decide the Motion. Thread's choice not to address particular allegations raised in the Amended Answer is not an admission that they are accurate.

### A.    Thread and Its Intellectual Property

Thread is a Utah business that, among other products, designed and sells a crossbody bag, shown below:[1]

---

[1] Thread sells its bag in a variety of colors and patterns; the images show just one pattern.

 

(Dkt. No. 20, ¶¶ 4, 9.)

Thread filed a patent application for the design of its crossbody bag in October 2020. (Dkt. No. 2, Ex. 1.) In December 2020, Thread missed a deadline to respond to a notice to file missing parts from the U.S. Patent and Trademark Office ("the USPTO"). (*See*, *e.g.*, Amended Answer, ¶ 60.) Thread received a notice from the USPTO in June 2021 informing it that its patent application had been marked as abandoned in the USPTO database due to Thread's failure to respond.[2] (*Id.*, ¶ 144.) A few weeks later, in July 2021, Thread filed a petition to revive its application because it had been unintentionally abandoned. (*Id.*) The USPTO eventually revived the application, and after further prosecution, the patent issued on August 15, 2023 as U.S. Pat. No. D995,105 ("the '105 patent"). (Dkt. No. 2, Ex. 1.)

Thread now owns two U.S. design patents—the '105 patent and a continuation, D1,025,591 ("the '591 patent")—that cover the design of its crossbody bag. (*Id.*, ¶¶ 10, 12.)

### B.    Brixley and Its Crossbody Bag

---

[2] It is important to note that a notice of "abandonment" from the USPTO does not necessarily mean an application is dead. Rather, it means the Patent Office will no longer review the application, and the application will not proceed to issuance unless the patent owner successfully revives it. *See*, *e.g.*, Manual of Patent Examining Procedure § 711 ("An abandoned application … is one which is removed from the Office docket of pending applications. … When advised of the abandonment of his or her application, applicant may … petition for revival.").

A few months after Thread's crossbody bag was released, Brixley announced that a first version of its crossbody bag (referred to in this opposition as "V1") was available for pre-order. Example images of this bag are shown below:

 

(*See* Ex. A.)

In April 2021, Thread sent a letter to Brixley informing Brixley of Thread's "pending" patent application(s). (Amended Answer, ¶ 107.) A copy of that letter is attached as Exhibit A.[3] At that time, Thread did not have an issued patent. Thus, the April 2021 letter stated, "We are sending this to notify Brixley Bags of Thread Wallets' intention to enforce its intellectual property rights, including its design patent rights **should they still cover the above design at issuance**." (*See* Ex. A, p. 4 (emphasis added).)

On May 4, 2021, Brixley's counsel responded with a letter stating that Thread's April 2021 letter "fails to provide Brixley Bags with any notice of the intellectual property rights they are allegedly infringing" and that "we understand that your client has not yet been granted any patent rights and such potential rights are currently undefined and may never be granted." A

---

[3] This letter is referred to several times in the Amended Answer and thus is properly attached here. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (allowing a district court to consider outside documents on a motion to dismiss when the documents were referred to in the pleadings and the parties do not dispute their authenticity).

copy of that letter is attached as Exhibit B.[4]

> Thread's counsel responded later that month, stating:
>
> Your references to Utah Code § 78B-6-1903 suggest you may believe Thread Wallets … is alleging infringement of a registered patent. That is not the case. As we explained, Thread Wallets has filed a patent application covering the design of its crossbody bag but has not received an issued patent on that application.

A copy of that letter is attached as Exhibit C.[5]  (*See also* Amended Answer, ¶¶ 135, 154.)

The parties continued to communicate through their counsel, and Thread suggested some changes Brixley could make to differentiate its crossbody bag from Thread's crossbody bag. In early summer 2021, Brixley designed a modified version of its crossbody bag (referred to here as "V2") and ordered samples. An example of the modified version is shown below:

 

(*See* Dkt. No. 2, p. 6.) Brixley's new bag did not include all of the changes Thread had suggested (for example, that Brixley move or change the shape of its D-rings).

In July 2021, Brixley represented that it had sold through its inventory of its V1 bag. (Amended Answer, ¶ 43.) That same month, as explained above, Thread filed a petition to revive its patent application because it had been inadvertently abandoned. (*Id.*, ¶ 144.)

---

[4] This letter is also referred to and quoted several times in the Amended Answer. *See Jacobsen*, 287 F.3d at 941.

[5] This letter is also referred to in the Amended Answer. *See Jacobsen*, 287 F.3d at 941.

On August 3, 2021, while the parties were still discussing changes Brixley could make to its bag, Brixley's counsel told Brixley that it could "go ahead" and order the V2 bag, stating that "[Thread] may be upset, but you've tried to cooperate and your new design most likely doesn't infringe." Brixley accordingly ordered inventory of its V2 bag around August 6, 2021.

On August 11, 2021, Thread's counsel wrote to Brixley's counsel stating (among other things):

> It appears that we are in agreement that your client Brixley will change the location of its zipper and logo in all future versions of its crossbody bag offering. The bag will also now include loops and a fourth ring on the back of the bag which will further help to distinguish it from the cross body bag offered by Thread Wallets.
>
> You have indicated that Brixley is unwilling to relocate the bag's D rings to the side of the bag, rather than the back. Would it instead be willing to use rings shaped differently than the D rings? … This was a compromise idea advanced by Thread Wallets.
>
> Please let me know Brixley's response. Once we have the outstanding ring shape/location matters firmed up, Brixley can begin ordering its new bags. And I will put a simple letter agreement together to memorialize the parties' understanding.

(*See* Ex. D, pp. 2–3;[6] *see also* Amended Answer, ¶ 44.)

In September 2021, Brixley began advertising its V2 bag on its website. Thread's counsel emailed Brixley's counsel on September 28, 2021, stating:

> Just had a look at Brixley's site. It appears they moved forward on the redesign without a change in the shape of the D rings as had been proposed by my client. I'll discuss with my folks and let you know their reaction. Given that Brixley has already moved forward and is offering the new bags, I don't see a need for a written agreement. Thread reserves all rights and will keep an eye on this matter going forward.

(*Id.*, p. 1.) Brixley's counsel responded, "Hopefully the other design changes are satisfactory to your client, we understand that they will keep an eye on the matter going forward."[7] (Ex. E, p. 1.)

---

[6] Portions of this email and others exchanged between the parties' counsel are quoted in the Amended Answer. *See Jacobsen*, 287 F.3d at 941.

[7] Thread believes this exchange is the "sham settlement agreement" Brixley references in its Amended Answer. (Amended Answer, ¶ 176.)

C.     **Brixley's V2 Bag Goes Viral.**

In early 2022, Brixley's V2 bag "went viral" on TikTok, and Brixley's sales exploded.

Soon after, consumers began to comment on the similarities between Thread and Brixley's

crossbody bags. Many accused Thread of copying Brixley. Comments included:



(*See*, *e.g.*, Dkt. No. 2, ¶ 14.)

Thread's '105 patent issued in August 2023. In October 2023, Thread sent Brixley a letter

demanding that Brixley stop selling its V2 crossbody bag. (Amended Answer, ¶ 109.) Brixley

refused to do so, and this action ensued. (*Id.*, ¶¶ 110–111; Dkt. No. 2.)

III.     **ARGUMENT**

The proposed amendments to Brixley's answer are myriad. Thread largely denies the new

allegations and does not believe Brixley has adequately pled the vast majority of them. Rather

than address each allegation in Brixley's 50-page pleading, this Opposition focuses on Brixley's

new affirmative defenses—the Third (indefiniteness), Sixth (inequitable conduct), Seventh

(unclean hands), and Eighth (failure to mitigate)—and its two new counterclaims—Counterclaim

Three (violation of Utah Code § 78B-6-1901 *et seq.*) and Counterclaim Four (fraudulent misrepresentation). In deciding the Motion, the Court must avoid the unnecessary and irrelevant allegations in the Amended Answer and instead detect what is missing. *See*, *e.g.*, <u>*U.S. ex rel. Garst v. Lockheed-Martin Corp.*</u>, 328 F.3d 374, 378 (7th Cir. 2003) ("Surplusage can and should be ignored. … [A] judge should bypass the dross [in a pleading] and get on with the case.").

Brixley's proposed amendment is untimely, unduly delayed, prejudicial, and futile.[8] Thus, the Motion should be denied.

### A. Brixley's New Affirmative Defenses and New Counterclaims Are Unduly Delayed, Untimely, and Prejudicial Under Rules 15 and 16.

Brixley's proposed amendment is untimely, unduly delayed, and prejudicial. Brixley seeks to add new affirmative defenses and counterclaims nearly six months after the deadline to amend pleadings (Dkt. No. 19), and thus "must satisfy both the Rule 16(b) and Rule 15(a)

---

[8] In addition to the other reasons discussed in this Opposition, Brixley's proposed amendment should be rejected because it violates the Rule 8 requirement that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also* <u>*Baker v. City of Loveland*</u>, 686 F. App'x 619, 620 (10th Cir. 2017) (noting a counterclaim can violate Rule 8—and is therefore subject to dismissal—"through unnecessary length and burying of material allegations in 'a morass of irrelevancies.' "); *Garst*, 328 F.3d at 378 ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."); <u>*Mann v. Boatright*</u>, 477 F.3d 1140, 1148 (10th Cir. 2007) ("In its sheer length, Beverly has made her complaint unintelligible 'by scattering and concealing in a morass of irrelevancies the few allegations that matter.'") (quoting *Garst*, 328 F.3d at 378).

The Amended Answer is over 50 pages and has 154 paragraphs of allegations (not including the 37 paragraphs of responses to Thread's complaint), several of which include multiple subparts.[8] (*See*, *e.g.*, ¶¶ 92 (6 sub-paragraphs), 93 (16 sub-paragraphs).) The Amended Answer is difficult to follow and replete with irrelevant allegations, yet fails to plead the basic elements of its counterclaims and defenses. Brixley's prolixity cannot be excused merely because of the heightened pleading standards for inequitable conduct and fraud. *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) ("A heightened pleading standard is not an invitation to disregard's Rule 8's requirement of simplicity, directness, and clarity.").

standards." *Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 989 (10th Cir. 2019) (*citing Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).

Under Rule 16(b)(4), Brixley must show "good cause" for the amendment, meaning that "it has been diligent in attempting to meet the deadlines" and can "provide an adequate explanation for any delay." Fed. R. Civ. P. 16(b)(4); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006); *Doe v. Intermountain Healthcare, Inc.*, Case No. 2:18-cv-00807, 2020 WL 6743256, at *2 (D. Utah Nov. 17, 2020) (finding failure to "provide adequate explanation for any delay … warrants denial of the motion to amend."). Brixley offers no such explanation.

Brixley's Amended Answer includes, among other things, four new affirmative defenses and two new counterclaims. Brixley's new[9] Third Affirmative Defense alleges that Thread's patents are invalid under 35 U.S.C. § 112 as indefinite, and cites alleged deficiencies in the drawings of the '105 and '591 Patents. (Amended Answer, ¶¶ 47, 48.) The Third Affirmative Defense relies completely on the patent drawings; it does not cite any outside evidence. (*Id.*) Both patents were available to Brixley for inspection at the time it filed its First Amended Answer in April 2024. Brixley does not explain why it could not bring this affirmative defense by the November 5, 2024 deadline to amend pleadings or identify any information learned through discovery after the deadline to amend pleadings.

There is also no adequate explanation for the delay in alleging Brixley's new Sixth or Seventh Affirmative Defenses. The Sixth Affirmative Defense alleges that Thread's patents are unenforceable because Thread allegedly withheld prior art references during the prosecution of Thread's patents, and the Seventh alleges that Thread's claims are barred based on the same

---

[9] Brixley replaced the text of its original Third Affirmative Defense, which alleged the patents were invalid under 35 U.S.C. § 171 as not original. (*Compare* Amended Answer, ¶ 47, to Dkt. No. 21, p. 7.)

conduct. Brixley claims the "critical facts" supporting its inequitable conduct defense did not come to light until January 2025 "during Plaintiff's deposition and related discovery." (Motion, p. 4.) But Brixley does not cite any deposition testimony or discovery from January 2025. Rather, Brixley cites the following:

- Mr. Bauer's December 2, 2024 deposition testimony (Amended Answer, ¶ 59);
- Mr. King's December 2, 2024 deposition testimony (*id.*, ¶ 88);
- 2021 communications between the parties' lawyers,[10] which have been in Brixley's possession since before this lawsuit was filed (*id.*, ¶¶ 77–90);
- Conclusory statements regarding Thread's alleged intent, thoughts, and knowledge (*id.*, ¶ 92);
- Documents that Thread produced in the summer of 2024 (*id.*); and
- The demand letter Thread sent to Brixley on October 5, 2023 (*id.*, ¶ 93).

Thus, based on the evidence it has cited, Brixley knew about its potential inequitable conduct defense by at least December 2, 2024—five months ago. Brixley does not identify any specific evidence it learned after that date that allegedly supports its claims. This is fatal to its Motion to add defenses based on inequitable conduct. *See*, *e.g.*, *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015) (affirming the denial of a motion to amend when the movant failed to adequately explain its four-month delay in filing its motion).

Likewise, there is no adequate explanation for the delay in alleging Brixley's two new counterclaims. Both of Brixley's new counterclaims and its unclean hands defense depend on allegations that Thread's patent application was temporarily abandoned in 2021, and that Thread knew its application was temporarily abandoned. (*See*, *e.g.*, Amended Answer, ¶¶ 137, 159–60, 176, 186.) In its Motion (but not in its Amended Answer), Brixley claims the facts giving rise to its new counterclaims Counts III and IV "did not come to light until January 2025," and that, in

---

[10] These communications also seem to have no relevance to the defense.

particular, it was not aware of the temporary abandonment until January 2025. (Motion, pp. 2–3, 4.) But Brixley does not identify why it was unaware of those facts until January 2025.

Brixley could have and should have been aware of the prosecution history of the '105 patent in August 2023, when the '105 patent issued and its prosecution history was published. Brixley does not explain why it was unaware of these public records until January 2025. Brixley does not cite any deposition testimony about the temporary abandonment of Thread's patent application, and its limited citations to Thread's deposition testimony and documents in the Amended Answer are irrelevant and/or refer to facts that would have already been apparent at the time Brixley filed its original answer. (*See, e.g.*, Amended Answer, ¶ 191.[11]) Thus, Brixley has not explained why it could not bring its amended counterclaims or unclean hands defense by the November 2024 deadline to amend pleadings, and cannot show it acted diligently in trying to meet its case deadlines.

Even if Brixley could meet the Rule 16 standard (it cannot), Rule 15 bars the proposed amendment. Rule 15 considers undue delay, bad faith, undue prejudice, and futility. *Minter*, 451 F.3d at 1204. The 10th Circuit "focuses primarily on the reasons for the delay" and has "held that denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Id.* at 1206 (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir.1993)). "[U]ntimeliness alone" is sufficient to deny Brixley's Motion. *See, e.g.*, *U.S. West*, 3 F.3d at 1365–66. Prejudice is found "most often" "when the amended claims arise out of a subject matter different from what was set forth in the [original pleading] and raise significant new factual issues." *Minter*, 451 F.3d at 1208.

---

[11] *E.g.*, most of the allegations in ¶ 190 refer to events that took place in 2022—after the parties had ceased communicating regarding Thread's April 2021 letter.

Brixley's proposed amendments are untimely and prejudicial under Rule 15. This case has been pending for nearly a year and a half. The deadline to serve written discovery passed five months ago (Dkt. No. 19), the parties have taken numerous depositions, and the case is on the eve of expert discovery. Moreover, at the February 19th status conference, Judge Bennett instructed the parties to be prepared to propose only limited additional discovery once the Court rules on Thread's motion to amend its complaint. Filing an amended pleading at this stage—particularly an amended pleading that spans over 50 pages and includes 154 paragraphs of allegations—is highly prejudicial to Thread. The new allegations raise significant new factual issues that have not already been the subject of fact discovery in this case. This is the type of delay and prejudice that Rule 15 is meant to prevent. *See*, *e.g.*, *Minter*, 451 F.3d at 1208.

Thus, Brixley's new proposed affirmative defenses and counterclaims are improper under Rules 15 and 16, and Brixley's Motion should be denied.

### B.    Brixley's Amended Answer is Futile and Unsupported by Fact or Law.

In addition to being far too late, Brixley's proposed amendments also fail under Rule 15 because they are futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mehias*, 379 F.3d 892, 901 (10th Cir. 2004). Brixley's proposed amendments are futile because it has not pled the necessary elements of its inequitable conduct defense or its two new counterclaims.

### 1.    Brixley's Inequitable Conduct Defense Fails Because Brixley Does Not Adequately Allege Intent to Deceive the USPTO.

Brixley's Sixth Affirmative Defense alleges inequitable conduct based on Thread's failure to disclose the "Tommy Hilfiger Crossbody" reference during prosecution of the '105 and '591 patents, and to disclose the Fjallraven bag during prosecution of the '105 patent. (Amended Answer, ¶ 171.) Inequitable conduct is "a common litigation tactic," "overplayed, "clutter[s] up

the patent system," and is "an absolute plague." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc). Thus, in 2011, the Federal Circuit "tighten[ed] the standards for finding [inequitable conduct] to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290. "A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (citing *Exergen v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318, 1330 (Fed. Cir. 2009)).

Inequitable conduct requires a particularized allegation of intent to deceive the USPTO. *Therasense*, 649 F.3d at 1287. Specifically, Brixley "must meet the strict pleading standards of fraud contained in Federal Rule of Civil Procedure 9(b), including: 'identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.'" *C.R. Bard, INC. v. Med. Components, Inc.*, No. 2:17-CV-754 TS, 2019 WL 1746309, at *2 (D. Utah Apr. 18, 2019) (dismissing an inequitable conduct counterclaim for failure to adequately plead it). Brixley has not met this standard.

Brixley fails to adequately plead intent because it does not allege facts from which the Court can reasonably infer that "a specific individual" 1) knew about the Tommy Hilfiger and Fjallraven references and their materiality and 2) withheld that information with a specific intent to deceive the PTO. *See Exergen*, 575 F.3d at 1318, 1330. Brixley identifies three Thread executives—Colby Bauer, Ryan King, and Dylan Boyes—who allegedly concocted a "sophisticated" scheme to deceive the USPTO during prosecution of the '105 and '591 patents. (*See, e.g.*, Amended Answer, ¶¶ 74–75.) But, at best, Brixley only alleges that each of these

individuals played separate roles during the development and patenting of Thread's crossbody bag. It has not and cannot allege that one (or more) or them knew about the references, knew they were material, and withheld that information intending to deceive the PTO.

> **a)    Brixley Fails to Identify Any Individual Who Knew of the Tommy Hilfiger Reference and Deliberately Withheld It During Prosecution.**

Brixley alleges that the Tommy Hilfiger reference was in Colby Bauer's design files. (*Id.*, ¶ 59.) But this is insufficient to show knowledge of materiality or deceptive intent. *See*, *e.g.*, *C.R. Bard*, 2019 WL 1746309, at *3 ("The fact that the Gebauer Reference was contained in the custodial files of Kelly Powers does not show his knowledge of materiality or evidence his deceptive intent."). Brixley also cites no deposition testimony or other evidence showing that Mr. Bauer had any knowledge of or involvement in the prosecution of either patent application.[12]

Brixley identifies Ryan King as the "IP liaison overseeing all patent-related communications"—not Mr. Bauer. (*See* Amended Answer, ¶ 57.) But Brixley does not allege Mr. King was aware of the Tommy Hilfiger reference other than to say his awareness can be "inferred" from his awareness of Brixley (not Tommy Hilfiger), and his awareness of other (unidentified) bags in the market. (*Id.*, ¶ 71.) In other words, Brixley claims Mr. King's awareness of the reference came from third parties—not even from Mr. Bauer. Brixley's allegation that Mr. King "deliberately suppressed" the reference is pure speculation. (*Id.*, ¶ 72.)

Brixley makes no attempt to allege that Mr. Boyes had any knowledge of the Tommy Hilfiger reference, or how he would have acquired that knowledge. It merely alleges that he "understood … that the Tommy Jeans Crossbody's features closely aligned with their claimed

---

[12] Brixley cites THREAD_001441 in connection with its claim that "Mr. Bauer drove Plaintiff's IP strategy with Boyes and King," but that document does not reference Mr. King or Thread's IP strategy.

designs," and that he was part of a "collective decision … to withhold [the] reference." (*Id.*, ¶¶ 73–74.) Nor does Brixley allege that Mr. Boyes was aware of or involved in the prosecution of Thread's patent applications.

Thus, Brixley fails to allege that any Thread representative knew of the Tommy Hilfiger reference, participated in prosecuting Thread's patent applications, and deliberately withheld it from the USPTO; therefore its defense is not sufficiently pleaded to avoid a motion to dismiss.

### b) The Fjallraven Reference is Irrelevant to Inequitable Conduct Under Federal Circuit Precedent.

Brixley's allegations regarding the Fjallraven reference fall flat under Federal Circuit precedent. The Fjallraven reference was disclosed to the USPTO during prosecution of Thread's '591 patent, but not during prosecution of the (earlier-filed) '105 patent. (Amended Answer, ¶ 67.) Brixley cites this disclosure as further evidence of Thread's alleged inequitable conduct. (*Id.*) But the Federal Circuit has held that this is insufficient to show inequitable conduct. *Exergen*, 575 F.3d at 1331 (finding that "[t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application" is insufficient to plead deceptive intent).

Brixley makes no other attempt to show that any individual at Thread knew of the Fjallraven reference and participated in Thread's patent prosecution. Brixley does briefly allege that Ryan King "knew of the Fjallraven sling before the D'105 was granted" (Amended Answer, ¶ 57) but does not allege any factual basis for this claim. Thus, Brixley fails to adequately allege intent with respect to the Fjallraven reference.

Brixley attempts to shore up its intent allegations with a list of allegations that are not supported by the record and/or have no relevance to an inequitable conduct defense. (*E.g.*, Amended Answer, ¶¶ 92, 93.) But these allegations do not evidence any intent to deceive the

15

USPTO. *See*, *e.g.*, *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) ("[T]here is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market."). Because Brixley has not adequately pled—and cannot prove—intent to deceive, its inequitable conduct defense should be dismissed.[13]

### 2. Brixley's Failure to Mitigate Defense is Futile Because Thread Filed Suit Within Months of the Issuance of the '105 Patent.

Brixley's Eighth Affirmative Defense alleges Thread failed to mitigate its damages by "failing to correctly communicate its patent and application status and its apparent position on the agreement with Brixley." (Amended Answer, ¶ 101.) Brixley does not explain why either of these statements (if true) support its defense.

Black's Law Dictionary has defined "mitigation of damages" as a plaintiff's failure, after an injury, "to make reasonable efforts to alleviate the effects of the injury or breach." BLACK'S LAW DICTIONARY 1093 (9th ed. 2009). Thread told Brixley it reserved all rights after Brixley failed to change its bag, sent a cease and desist letter within months after Thread's '105 Patent issued and an actionable injury arose, and promptly filed suit when its demand was rejected. (Amended Answer, ¶¶ 109, 111.) Thus, in addition to the fact that Brixley waited too long to bring it, Brixley's mitigation of damages defense is futile.

### 3. Brixley's Bad Faith Assertion of Patent Infringement Act Counterclaim Fails Under the Plain Language of the Statute

Brixley's proposed Counterclaim Three alleges violation of Utah's Bad Faith Assertion of Patent Infringement Act ("the Act"), and claims entitlement to attorneys' fees and costs

---

[13] Brixley's allegations regarding inequitable conduct in the Seventh Affirmative Defense fail for the same reasons.

exceeding $500,000. (Amended Answer, ¶ 174.) However, Brixley's Counterclaim Three fails to identify communications that fall within the scope of the Act.

### a)    The Act Only Encompasses Letters Alleging Infringement.

The Act prohibits distribution of "a demand letter" that "includes a bad faith assertion **of patent infringement**." Utah Code § 78B-6-1903(1) (emphasis added).[14] The Act defines a "demand letter" as "a letter, email, or other written communication directed to a target and asserting or claiming that the target **has engaged in patent infringement**." Utah Code § 78B-6-1902(1)(a) (emphasis added). It further clarifies that "'[d]emand letter' **does not** include a complaint filed in a United States District Court asserting patent infringement or discovery responses or other papers filed in an action." Utah Code § 78B-6-1902(1)(b) (emphasis added).

Thus, the plain language of the Act only prohibits bad-faith distribution of letters asserting that a target has infringed a patent. Communications that do not allege patent infringement fall outside of the Act regardless of any other circumstances related thereto.

Brixley suggests in its Motion that this question is merely a matter of statutory interpretation and is inappropriate for the Court to consider here. (Motion, p. 8.) But interpreting the plain meaning of a statute is routine—and necessary—whenever a statute is the basis for a counterclaim and futility is at issue. The Court must "read each [statutory] term according to its ordinary and accepted meaning," and when statutory language "is plain and unambiguous, [a] Court will not look beyond the same." *Atwood v. Dotdash Meredith Inc.*, No. 1:24-CV-00046-TC-DAO, 2025 WL 815118, at *4 (D. Utah Mar. 13, 2025) (internal citations omitted). Otherwise, parties could seek discovery on ultimately fruitless subjects. The language in the Act is clear—it only applies to letters asserting that a target has infringed a patent. Brixley cites no

---

[14] *See also* Utah Code § 78B-6-1904(1) (creating a remedy for "[a] target who has received a demand letter **asserting patent infringement**.") (emphasis added).

language in the Act that creates any ambiguity or otherwise creates a cause of action for a letter that does not allege patent infringement.

> **b)    The Communications Brixley Relies on Fall Outside the Scope of the Act.**

It is unclear exactly which communications Brixley includes in its claims under the Act. The potential communications can be divided into three categories:

1)    2021 communications (before either patent issued);
2)    October 2023 communications after Thread's '105 patent issued, but before Thread filed its lawsuit; and
3)    Communications starting with and continuing since the lawsuit was filed.

In its new counterclaim, Brixley identifies "both the April 22, 2021 demand letter and the October 5, 2023 correspondence" as violating the Act, and suggests (without specifically stating) that all other communications between the parties also violated the Act.[15] (*See* Amended Answer, ¶¶ 163, 164.) However, Brixley's Motion only identifies "Thread's April 2021 demand letter" as the subject of its counterclaim. Brixley's failure to clearly identify all communications at issue is an additional reason to dismiss its Motion.

Communications associated with this lawsuit (Category 3 above) are clearly ineligible for recovery under § 78B-6-1902(1)(b) of the Act because a "demand letter "does not include a complaint filed in a United States District Court asserting patent infringement or discovery responses or other papers filed in an action."

2021 communications (Category 1 above) also do not fall within the scope of the Act because those communications did not assert or claim that Brixley had infringed a patent. *See* Utah Code § 78B-6-1902(1)(a). Thread's April 2021 letter—which is quoted in Brixley's Motion—merely "notif[ied] Brixley Bags of Thread Wallets' intention to enforce its intellectual

---

[15] This inference is supported in part by Brixley's claim to recover $500,000 in attorney's fees under the Act.

property rights, including its design patent rights **should they still cover the above design at issuance**." (*See* Exhibit A, p. 4 (emphasis added).) And Thread's May 2021 letter clarified:

> Your references to Utah Code § 78B-6-1903 suggest you may believe Thread Wallets … is alleging infringement of a registered patent. That is not the case. As we explained, Thread Wallets has filed a patent application covering the design of its crossbody bag but has not received an issued patent on that application.

(*See* Exhibit C, p. 1; *see also* Amended Answer, ¶ 135.)

Brixley does not even attempt to allege otherwise in its new pleading or its Motion.[16] Its new counterclaim quotes Brixley's May 2021 letter, which states Brixley's 2021 understanding that Thread had "not yet been granted any patent rights." (*See* Amended Answer, ¶ 137.) Brixley's assumption that the Act covers Thread's 2021 communications is incorrect, and fatal to Brixley's counterclaim.

> c)    **Brixley's Allegations Regarding the October 2023 Letter Are Preempted Because Brixley Fails to Allege that Thread's Allegations Were "Objectively Baseless."**

This leaves only the October 2023 letter and communications leading up to this lawsuit (Category 2 above). But Brixley has not adequately pled its counterclaim with respect to these communications, either. State laws regarding patent infringement demand letters exist in tension with federal law allowing patent holders to protect their patent rights. Thus, in order to allege a counterclaim under the Act, Brixley must allege that Thread's infringement claims "were objectively baseless." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004). Otherwise, its counterclaim is preempted and subject to dismissal. *Id. See*, *e.g.*, *Boydstun Equip. Mfg., LLC v. Cottrell, Inc.*, No. 3:16-CV-790-SI, 2017 WL 4803938, at

---

[16] Brixley does claim that the April 2021 letter "referenc[es] 'patents being asserted.'" (Amended Answer, ¶ 128.) Thread is unaware of any such language in the April 2021 letter, but this phrase is used in Brixley's May 2021 response. (*Id.*, Ex. A, p. 1.)

*18 (D. Or. Oct. 24, 2017) (granting a motion to dismiss a claim under Oregon's bad-faith patent assertion law because the claimant failed to allege that the patent holder's enforcement actions were "objectively baseless"). Brixley must allege that Thread's infringement claims were "objectively baseless" even if that specific language is not included in the Act. *See Landmark Tech., LLC v. Azure Farms, Inc.*, No. 3:18-CV-1568-JR, 2020 WL 1430088, at *3 (D. Or. Mar. 24, 2020) (holding that "[t]o avoid preemption," objective baselessness "must be alleged and proven as part of the claim, even if [it is] not set forth under state law.").

Brixley has not alleged that Thread's August 2023 infringement claims were "objectively baseless," and its claims with respect to the Category 2 communications are thus preempted by federal law. *See id.* Brixley's Motion claims it is sufficient to allege bad faith. (Motion, p. 8.) But the Federal Circuit rejected this reasoning in *Globetrotter Software.* 362 F.3d at 1376 ("[T]he question before us is whether the bad faith standard of *Zenith* can be satisfied in the absence of a showing that the claims asserted were objectively baseless. We hold that it cannot.").

Thus, Brixley has failed to plead the basic elements of a claim under the Act, and its counterclaim would not survive a motion to dismiss. Therefore, its motion to amend is futile.

### 4.    Brixley Has Not Pled its Fraudulent Misrepresentation Counterclaim With Particularity And Cannot Do So.

Brixley's Counterclaim Four alleges fraudulent misrepresentation with respect to communications between the parties. Brixley has not alleged this counterclaim with particularity and cannot do so.

To state a claim for fraudulent misrepresentation under Utah law, Brixley must allege, among other things, that Thread made a false representation about a material fact, causing damage to Brixley. *Dugan v. Jones*, 615 P.2d 1239, 1246 (Utah 1980). Rule 9 demands that Brixley "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

9(b). Brixley cannot "simply plead the bare elements" its counterclaim. *ClearOne, Inc. v. RSM US LLP*, No. 2:16-CV-00736-DN, 2017 WL 923949, at *7 (D. Utah Mar. 6, 2017) (internal quotations omitted).

Brixley's fraud counterclaim fails because 1) Brixley does not adequately allege that any statements were material, and 2) Brixley does not allege damage with particularity.

First, Brixley fails to allege materiality in a way that is not futile. Any misstatements made by Thread's counsel in 2021[17] were immaterial because Thread's patent application was revived and the '105 patent eventually issued. Essentially, the 2021 communications stated that if Thread secured an issued patent, and if Brixley infringed that patent at issuance, then Thread would file suit against Brixley. (*See* Exs. A, C.) Brixley's Motion describes this "threat" as "hollow," claiming Thread asserted "that Thread had a viable patent application that would imminently issue and could be enforced against Brixley's product."[18] (Motion, p. 9.) But Brixley skims over the fact that Thread's '105 patent did issue, and when it did, Thread filed suit—just as Thread had explained it would do. Thus, any alleged misstatements are immaterial.

Brixley's Motion—but not its amended counterclaim—also claims Thread "lie[d]" to Brixley about "the existence of patent rights."[19] (Motion, pp. 9–10.) But Thread's 2021 letters

---

[17] Because Brixley has not identified additional fraudulent statements, Thread cannot address whether those statements may have been material.

[18] Brixley does not identify the source of its claim that Thread threatened its application would "imminently" issue. Thread never made this claim. Thread's May 2021 letter (which is referenced in Brixley's Amended Answer) actually includes statements such as "if or when Thread Wallets' patent application issues," "the scope of the patent may change during prosecution, so the images as filed do not define what the patent will cover if it issues," and "these figures…may not represent the scope of Thread Wallets' patent if or when it issues." (Ex. C, p. 3.)

[19] Because this allegation is not made in the Amended Answer, it cannot be considered by the Court.

explicitly (and truthfully) stated that Thread did not have any patent rights. (*See*, *e.g.*, Amended Answer, ¶ 135.) Brixley's Motion does not identify any specific statements in Thread's 2021 communications that claimed existing patent rights.

Second, Brixley fails to allege specific damage stemming from the 2021 communications. Brixley claims it has suffered "significant direct, and consequential damages," but does not identify those damages other than claiming that they "include" "more than $500,000 in legal fees." (Amended Answer, ¶ 177.) Nor does Brixley explain how those alleged damages were caused by the alleged misrepresentation. For example, Brixley does not explain why modifying its bag damaged Brixley. To the contrary, Brixley describes its V2 bag as "amazingly wearable," and references Brixley's "significant market success" since modifying the bag. (*Id.*, ¶ 94.) These inconsistent allegations are insufficient to meet the Rule 9 particularity standard.

Brixley's Motion attempts to remedy this deficiency in its proposed pleading by claiming that the harm suffered by Brixley "includ[es] expending time and resources on a redesign and losing opportunity in the marketplace." (Dkt. No. 58, p. 9.) But this allegation is not made in the amended counterclaim and cannot substitute for properly pled damages tied to the alleged fraud. In any event, that statement does not explain Brixley's claim that its damages include "more than $500,000 in legal fees" (Amended Answer, ¶ 177), so the proposed amendment is futile.

Thus, Brixley failed to plead fraud with particularity, and its counterclaim is futile.

## IV.    CONCLUSION

The critical facts giving rise to Brixley's new counterclaims and defenses have been publicly available for many months, some since August 2023. As such, Brixley simply waited too long to seek leave to amend and has not been diligent. Additionally, the proposed amendments are futile. Accordingly, Thread asks the Court to deny the Motion.

DATED this 12th day of May, 2025.

WORKMAN NYDEGGER

Respectfully submitted,

/s/ Brittany Frandsen
    David P. Johnson
    Brittany Frandsen

*Attorneys for Plaintiff Thread Wallets LLC*

23