Chad Pehrson (12622) cpehrson@kba.law
Thomas D. Briscoe (16788) tbriscoe@kba.law
Bryan B. Todd (19099) btodd@kba.law
**KB&A**
50 West Broadway Ste 1000
Salt Lake City, UT 84101
Telephone: (801) 994-4646
*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| THREAD WALLETS LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BRIXLEY BAGS, LLC, a Utah limited liability company;<br><br>Defendant. | Case No. 2:23-cv-00874-JNP-JCB<br><br>**BRIXLEY BAGS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN AMENDED ANSWER AND COUNTERCLAIMS**<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

Brixley submits this Reply in Support of its Motion for Leave to File an Amended Answer (ECF 58). Thread opposed primarily on grounds of lateness and futility, and also insufficient fact pleading, pre-emption, and that its demand letters did not meet a statutory definition of "demand letter." Thread urges the court to deny the motion in its entirety.

Yet given the actual content of the comprehensive proposed amendment, Brixley meets the generous legal standard for seeking leave. Further, no actual evidence of undue delay is present: Brixley filed its request shortly after completing the discovery necessary to properly amend with the particularity required under the Federal Rules. Thread's opposition improperly conflates Rule 15's liberal amendment standard with an unreasonable and unsupported reading of Rule 16 and ignores the relevance and timing of newly discovered evidence that supports

1

Brixley's proposed amendments. Contrary to Thread's assertions, Brixley's amendments are grounded in deposition testimony and documents produced in the normal course of fact discovery—including admissions and materials revealing Thread's strategic nondisclosure of prior art—facts that were not reasonably available before the amendment deadline. Further, Thread's prejudice arguments ignore that fact discovery is not yet completed, expert discovery had not even begun, and no trial date is set. Additionally, Thread's futility arguments mischaracterize the pleadings by requiring evidentiary proof rather than plausible allegations. Finally, Brixley's statutory and fraud claims rest on sufficient factual allegations regarding Thread's objectively misleading conduct during pre-suit communications, which were designed to deter competition through the specter of patent enforcement, and are thus actionable under Utah law and not preempted by federal doctrine.

**I. The Motion for Leave Should be Granted.**

Brixley's amendments meet the relevant pleading standards and are not subject to dismissal. A "proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004).

**A. Brixley's Inequitable Conduct Defense Is Not Futile.**

Brixley's inequitable conduct allegations include that Thread intentionally withheld material prior art—specifically, the Tommy Hilfiger Crossbody and the Fjällräven Sling—from the USPTO during prosecution of its D'105 and D'591 patents, despite knowing their relevance. (¶¶ 56–58, 66-67, 72-74, 171-72). Specifically, Brixley alleges that Thread's CEO Colby Bauer included the Tommy Hilfiger bag in his "inspo" files and confirmed familiarity with it during his 30(b)(6) deposition (¶¶ 57–59, 61), and that CFO Ryan King, the designated IP liaison, managed patent-related communications yet failed to disclose this critical reference (¶¶ 57, 67–71).

Brixley contends that both individuals, along with co-inventor Boyes, acted deliberately to omit known third-party prior art that posed a risk of rejection under 35 U.S.C. §§ 102 and 103 (¶¶ 56, 66, 72–75). The defense further alleges that Thread submitted only inventor-originated prior art to exploit the § 102(b)(1) grace period, strategically timing disclosure of the less relevant Fjällräven reference while entirely withholding the more threatening Tommy Hilfiger Crossbody (¶¶ 68, 70, 72–74). Additionally, Brixley alleges that Thread's counsel falsely represented the D'105 application as "pending" during its abandonment period in 2021 to mislead Brixley into making design changes and entering negotiations under false pretenses (¶¶ 60, 64–66, 85–86).

      To successfully present a theory of inequitable conduct, the pleading must conform with Rule 9, which requires the identification of "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

      Brixley's Amended Answer identifies that Inventor/CEO Bauer was aware of the Tommy Hilfiger Crossbody and had it in his files, thus the "who" is satisfied. (¶¶ 59, 61). Ryan King also knew the Tommy Hilfiger Crossbody. (¶ 70). Similarly, the "what" is satisfied. Brixley's Amended Answer is clear that the inequitable conduct asserted here includes Mr. Bauer's awareness of the Tommy Hilfiger Crossbody and his decision to withhold a material reference from the USPTO, despite his obligation to disclose the reference. (Proposed Am. Answer ¶ 58). As a named inventor, Mr. Bauer owed a duty of candor to disclose information material to patentability under 37 CFR 1.56. (¶ 98). The "when" is satisfied as Brixley alleges that Thread failed to disclose the material reference in an IDS by the deadline of August 14, 2023, for the D'105 Patent and May 7, 2024, for the D'591 Patent. (¶ 57).

**B. Brixley's Failure to Mitigate Defense Is Not Futile.**

Thread also argues futility regarding Brixley's newly asserted defense of failure to mitigate damages. This defense alleges that Thread failed to mitigate its alleged damages by misleading Brixley during 2021 settlement discussions into believing that its redesigned crossbody bag was acceptable and would not be subject to future infringement claims, only to later reverse course and file suit years later. Brixley emphasizes that it made design changes in direct reliance on Thread's representations—including moving logos, adjusting zippers, and modifying other features—and that Thread's counsel stated there was no need for a written agreement and indicated the matter was resolved (¶¶ 40–46). Brixley avers that Thread's silence following these communications, combined with its delayed enforcement action until 2023, caused Brixley to invest heavily in the revised design and scale its business under the reasonable belief that legal claims had been resolved. (¶¶ 78-79, 154, 191.) Accordingly, Brixley contends that any alleged damages suffered by Thread were avoidable and resulted from Thread's own failure to act promptly or communicate its true intentions. (¶ 101.)

As to these allegations, Thread argues they are factually baseless and legally futile, putatively because it acted reasonably once it had an enforceable patent (Opp. pp. 16-17). This contention misunderstands applicable law and fails to accord the proposed pleading with the applicable procedural standards, namely that properly pleaded facts must be assumed true.

The doctrine of mitigation of damages requires that a plaintiff take reasonable steps to minimize or avoid damages after becoming aware of an alleged injury; a plaintiff may not recover for losses that could have been avoided through the exercise of reasonable diligence. *See Diversified Holdings, LC v. Turner*, 2002 UT 129, ¶ 9, 63 P.3d 686 ("A party cannot recover damages that could have been avoided by reasonable efforts").

4

As alleged in the amendment, after discussions with Thread's counsel in 2021, Brixley spent significant time and money redesigning its bag. (¶¶ 40-41, 78-79, 176, 191). Thread's counsel indicated they were aware of the changes and would "discuss with my folks and let you know their reaction." (¶ 85). With no subsequent communication received, Brixley reasonably believed the redesign was acceptable, and did not infringe any potential patent rights that Thread may receive. (¶¶ 153, 155, 191.). As alleged in the defense, much of the damage Thread claims to have suffered, if not all, could have been avoided had Thread, in 2021, informed Brixley that the redesign was a "failure" or otherwise unacceptable. (¶ 85). These facts, taken as true, are sufficient to support a viable failure to mitigate defense under applicable law.

C. Brixley's Bad Faith Assertion of Patent Infringement Act Counterclaim is Proper

Brixley's Bad Faith Assertion of Patent Infringement Act counterclaim alleges that Thread knowingly made false and misleading statements in its 2021 and 2023 demand letters—asserting rights under an abandoned or fraudulently obtained patent—to coerce Brixley into costly redesigns and concessions, in violation of Utah Code § 78B-6-1901 et seq.

In arguing futility, Thread's Opposition urges a hyper-literal reading of the applicable statute, arguing that a written communication must expressly assert "infringement" to qualify as a demand letter under the statute. That interpretation is unsupported by the text or purpose of the statute. The Act defines a "demand letter" broadly to include any written communication that "asserts or claims" patent infringement. Utah Code § 78B-6-1902(1)(a). The Act does not require specific legal terminology. *Id.* Thread's April 22, 2021 letter, which cited "multiple design patents pending," threatened enforcement, and demanded redesign within 13 days, clearly qualifies. (¶ 127.) Further, Thread's misrepresentation of rights—during a period when its application was abandoned—is independently actionable under Subsection (2)(b). (¶¶ 127–129.)

Thread also argues that federal law preempts Brixley's state law counterclaim. (Opp. p. 19). Yet the preemption rule in Globetrotter Software only protects objectively reasonable communications made in connection with issued patents. *Globetrotter Software, inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004). Thread's April 2021 and May 2021 communications involved abandoned rights that were misleadingly described as pending. (¶¶ 128–130, 136, 137). Preemption does not extend to communications made in bad faith. *Globetrotter,* at 1375. Likewise, the October 2023 letter's demand that Brixley abandon its own design patent application—an objectively baseless legal demand—is also not protected. (¶¶ 128–130, 176, 168); *see NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189 (M.D. N.C.) (upholding claims made under analogous bad faith assertion statutes where misleading pre-issuance or non-enforceable rights were asserted).

Thread's April 22, 2021 letter and emails were clearly demand letters under the Utah statute. (¶¶ 127, 153.)  The letter cited "multiple design patents pending" and threatened legal action. (¶¶ 127–128.) These communications asserted rights that Thread did not possess. (¶¶ 129–130.) By April 2021, Thread's design application had already gone abandoned. (¶ 60). Thread's continued references to pending rights—even after the expiration of that deadline—constitute knowingly false statements under § 78B-6-1903(2)(b)(vi). (¶¶ 128–129, 137.)

Although Thread claims in Opposition that it was not "made aware" of the abandonment until June 30, 2021, the public USPTO record demonstrates otherwise, as alleged in the Amended Answer. (¶¶ 127, 153.)  A Corrected Application Data Sheet (ADS) was filed on October 28, 2020, but no corrected filing receipt was ever issued. (Exhibit A – Table 2, Rows A–H (referenced in ¶¶ 137, 144). No action was taken to correct the Power of Attorney, and the six-month statutory deadline expired on April 29, 2021. (¶ 137.)   A reasonable practitioner

reviewing the file history would have known by early May 2021 that the application was abandoned. (¶ 137.)  Yet, Thread sent a follow-up email on May 21, 2021, continuing to reference a "pending" application. (¶ 136.)That misrepresentation was false and made with at least reckless disregard for its truth. Further, despite a May 4, 2021 commitment to "take a look and get back to you promptly," Thread waited more than 75 days—until July 20, 2021—to file a petition to revive. (¶¶ 133–135, 144.)  That delay supports an inference of bad faith and a further instance of inequitable conduct regarding the entire delay being unintentional.  (¶¶ 144-145.)

Thread's misrepresentations continued even after the revival effort. (¶¶ 85-86, 153.)  In September 2021, Thread sent a series of emails that further misled Brixley.  (¶¶ 85, 149-150.) The September 28 email stating, "If they don't intend to follow through on what we have discussed, I need to advise my client accordingly," followed minutes later by "Given that Brixley has already moved forward and is offering the new bags, I don't see a need for a written agreement," implied that the parties had reached resolution.  (¶ 150.) Thread then remained silent for more than two years.  (¶¶ 153,166.)  Brixley reasonably relied on that silence. (¶¶ 155,191.) In that context, the September 2021 emails contributed to a pattern of misleading conduct. (¶¶ 86,100,153.)

Thread's October 5, 2023 letter revived its infringement claims and included a demand that Brixley abandon its own pending design patent application. (¶¶ 154,168.)  That demand was objectively baseless and coercive. (¶¶168, 173.)  No legal authority entitles one party to demand abandonment of another's patent application.  (¶¶ 168,174.) The letter imposed an unreasonably short response deadline, consistent with the pattern of coercive behavior outlined in Utah Code § 78B-6-1903(2)(b)(iv), (vi), and (vii).  (¶ 161.)  Coupled with Thread's prior misleading communications and two-year silence, the October 2023 demand letter only reinforces the

conclusion that Thread's actions were taken in bad faith. (¶¶ 153, 166, 169–170).

Finally, Thread's contention that Brixley failed to identify the offending communications is incorrect. Paragraphs 138 through 163 of Brixley's Amended Answer and Counterclaims explicitly identify and quote from each demand letter and email that supports this counterclaim. These include the April 22 and May 21, 2021 letters, the September 2021 emails, and the October 5, 2023 letter. (¶¶ 138–163.) Thread's silence on Subsection (2)(b)(vi), which addresses misleading statements about patent rights, speaks volumes. (¶¶ 128, 137, 160, 173). Taken together, these communications establish a consistent pattern of false, misleading, and coercive assertions that fall squarely within the scope of the Utah Bad Faith Assertions of Patent Infringement Act.

## D. Brixley's Fraudulent Misrepresentation Counterclaim is Pled With Sufficient Particularity.

Finally, Thread argues Brixley's fraudulent misrepresentation counterclaim is futile for lacking in particularity. (Opp. p. 20). Here, the April 21, 2021 letter contained representations that Thread had "multiple design patents pending" when in actuality there were none. The fact that an application was later revived and matured into an issued patent does not change the fact that at no point during the 2021 negotiations were there "multiple" or even one patent application pending. These false representations were material, as but for the statements being made, Brixley would not have redesigned its bag. Thread either knew that the application had been abandoned, and made the false representations willingly, or was reckless in not conducting reasonable due diligence to ensure the status of pending design patent applications before sending demand letters based on those applications. The purpose of the application was to induce Brixley to either stop selling the bag, or redesign the bag. Brixley relied on these statements, acted to redesign its bag, incurring an expense and having to pause the sale of its bags losing revenue to its detriment.

### E.  Brixley Diligently Pursued Discovery Which Led to the Requested Amendment.

Thread also argues that "Brixley's proposed amendment is untimely, unduly delayed, and prejudicial." (Opp. p. 8).  These contentions are incorrect.   Brixley's Amended Answer appropriately pleads pertinent facts—each uncovered during a diligent approach to discovery in this action—that adequately support each claim and defense.

Rule 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The determination of whether to grant leave "is within the discretion of the trial court." *Zenith Radio Corp. v Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1970).  "[T]he Rule itself states that 'leave shall be freely given when justice so requires' . . . the purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).  The *Minter* court further held that "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action." *Id.* at 1205.

As to each aspect of the amendment, critical facts were uncovered at various stages of the fact discovery period (which period, incidentally, is still ongoing).  As noted in the Opposition, Brixley deposed Thread's 30(b)(6) witnesses on December 2, 2024. However, Thread ignores subsequent discovery events in arguing that the weeks between that deposition and the request for amendment should be fatal to Brixley's claims. In fact, Brixley responsibly moved forward with other depositions including the inventors of the asserted patents.  This included the deposition of Thread's executives Colby Bauer, Ryan King, and McKenzie Bauer later in December 2024, the depositions of Logan England and Trevor Reese in January 2025. Then

Brixley took the deposition of Dillon Boyes on February 10, 2025.[1] Mr. Boyes was the co-inventor of the D'105 and D'591 Patents, and his testimony informs many aspects of the proposed amendment. (¶¶ 59,68,75). In short, Brixley operated in a diligent and straightforward manner in obtaining the discovery necessary to request and present an amended pleading that would meet the Rule 9(b) standards applicable . Thread has not shown how the amendments are prejudicial, aside of course from the obvious—that the facts alleged in the amended pleadings are fatal to all of Thread's claims and a source of significant potential liability. In sum, the Motion to Amend should be granted.

Dated May 27, 2025.

                                              Respectfully submitted,

                                              /s/ Chad Pehrson
                                              Chad Pehrson
                                              Thomas D. Briscoe
                                              Bryan B. Todd

---

[1] The saga of deposing Mr. Boyes reveals some humorous irony in Thread's complaints of delay, given its role in the challenges Brixley faced to schedule Mr. Boyes' testimony. Given Mr. Boyes' role as inventor, Brixley reasonably assessed his testimony as crucial to obtain prior to seeking leave to amend its Answer. Initially, Thread's counsel claimed that it did not represent Mr. Boyes, writing: "Dillon Boyes is no longer employed by Thread, and we do not currently represent him. You may contact him directly to arrange for his deposition." Relying upon that representation from Thread's counsel, Brixley initiated the always tedious efforts to serve Mr. Boyes directly. Yet shortly thereafter, on December 18, 2024, Thread's counsel communicated that they were "working on rescheduling Dillon Boyes' deposition." Then, after the holidays, on January 8, 2025, Thread's counsel changed tact again, stating that they actually had been unable to "pin down a date" for Mr. Boyes and that they had "not been able to formalize [their] representation." Given their turnabout, they did helpfully offer: "we are happy to extend fact discovery for a week or two." So again, Brixley prepared to locate and serve Mr. Boyes directly. Yet then on January 29, 2025, Thread's counsel again changed course, stating: "We have been able to speak with Dillon Boyes, and he has retained us to represent him in connection with his deposition. He has family in town this week and asked if his deposition can be rescheduled for the morning of February 10th." Brixley honored this request from Thread's counsel, and Mr. Boyes' deposition was held February 10, 2025. Mr. Boyes was in fact represented at the deposition by Thread's counsel, despite their disavowals of representation. Brixley confesses frustration that Thread now deems Brixley's cooperation with its turnabouts and scheduling requests to constitute "undue delay."