Chad Pehrson (12622) cpehrson@kba.law
Thomas D. Briscoe (16788) tbriscoe@kba.law
Bryan B. Todd (19099) btodd@kba.law
**KB&A, PC**
50 West Broadway Ste 1000
Salt Lake City, UT 84101
Telephone: (801) 994-4646

*Attorneys for Defendant and Counterclaim Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| THREAD WALLETS LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BRIXLEY BAGS, LLC, a Utah limited liability company;<br><br>Defendant. | Case No. 2:23-cv-00874-JNP-JCB<br><br>**MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**<br><br>Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennett |

Defendant Brixley Bags, LLC moves for summary judgment of Plaintiff Thread Wallets' two asserted design patents –Design Patent Nos. D995,105 ("**D'105**") and D1,025,591 ("**D'591**") as anticipated under 35 U.S.C. § 102 and, independently, obvious under §103.

## INTRODUCTION

Thread seeks to enforce two design patents—D995,105 and D1,025,591—that were directly inspired by, and nearly identical to, a publicly available and widely marketed Tommy Hilfiger crossbody bag. ████████████████████████████

████████████████████████████████████████

██████████████

i



While this raises serious questions (*see* Dkts. 21 & 60, Fourth and Sixth Affirmative Defenses), the present motion is confined to the objective invalidity of the patents in view of the Tommy Hilfiger Crossbody prior art.[1]

---

[1] For the purpose of this summary judgment motion—which is based only on prior art—Brixley is temporarily ignoring the improper lines and shading in the D'105 and D'591 patents. Brixley is focusing only on the remaining design elements to analyze the overall appearance. However, Brixley is not giving up or waiving any arguments that those improper lines and shading make the patents invalid or not infringed. Those arguments are part of other defenses and counterclaims.

ii

The Tommy Hilfiger Crossbody, first sold and marketed well before Thread's patent applications, features all the core ornamental elements claimed by the D'105 and D'591 patents: a boxy silhouette with rounded corners, a front-facing recessed one-way zipper, a rectangular logo patch on the lower front panel, and a distinctive three-point D-ring configuration on the back— two upper D-rings and one lower for asymmetrical crossbody use. These design elements are not just similar—they are functionally and visually the same. Professor Howell's expert analysis confirms that the overall impression created by the Tommy Hilfiger Crossbody is substantially identical to both Thread patents, particularly under the ordinary observer test mandated by Federal Circuit precedent.

This clear prior art was never disclosed to the USPTO. Neither the D'105 nor the D'591 prosecution history contains any citation or acknowledgment of the Tommy Hilfiger design, ██████████████████████████████████████████████████. As is immediately evident upon even a cursory review of the Tommy Crossbody, the D'105 and D'591 patents fail under both anticipation and obviousness. Under the Federal Circuit's framework presented in *LKQ Corp. v. GM,* an ordinary designer would have found it obvious to make any trivial changes seen between the Tommy Hilfiger bag and the claimed designs. These include minor logo repositioning or mirrored strap configurations—standard fare for soft goods designers, and not the product of any inventive step. Objective indicia of non-obviousness are entirely absent.

In short, Thread's infringement claims rest on patents that simply do not withstand scrutiny. Some patent cases are close calls. Not this one.  No reasonable jury could find the claimed designs novel or non-obvious in light of the Tommy bag.

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... i

BACKGROUND ......................................................................................................... 1

    A. Design and Development of Thread's Crossbody Bag Design ................................. 1

    B. Tommy Hilfiger's Crossbody Bag Is Prior Art ...................................................... 2

STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS ........................... 3

    A. Legal Elements Required to Prevail On This Motion .............................................. 3

    B. Undisputed Facts That Establish The Legal Element ............................................. 5

LEGAL ARGUMENT AND SUPPORTING AUTHORITY ................................................ 8

    I. D'105 and D'591 Patens Are Anticipated by the Tommy Hilfiger Crossbody (35 U.S.C. § 102) .............................................................................................. 8

        A. ████████████████████████████ ............................ 8

        B. Ordinary Observer Would See No Difference Between the Designs ..................... 9

    II. The Asserted Design Patents Are Obvious in View of the Tommy Hilfiger Crossbody (35 U.S.C. § 103) ............................................................................ 15

        A. Tommy Hilfiger Crossbody Bag Serves As Primary Reference .......................... 16

        B. Minor Tweals Are Routine Design Choices ...................................................... 17

        C. No Real-World Evidence Suggests a Unique Design .......................................... 18

CONCLUSION ....................................................................................................... 20

**BACKGROUND**

**A.  Design and Development of Thread's Crossbody Bag Design**

Plaintiff sells wallets and bags. In 2019, as Plaintiff began developing its first crossbody bag, ████████████████████████████████████████████████ ████████████████████████████████████████████████ These reference images influenced Plaintiff's design. By late 2019, the core features of Plaintiff's bag (and its patents) already appeared in the Tommy Hilfiger bag: a boxy rectangular body with rounded corners, a front panel with a visible one-way zipper, a gusset zipper around the upper sides and top, a raised rectangular logo patch on the lower front, and a distinctive arrangement of three D-rings—two symmetrically at the top corners and one at a bottom corner for asymmetry. Plaintiff's designers operated in a crowded space, drawing from established market designs.

On October 23, 2020, Plaintiff filed a U.S. design patent application for its crossbody bag, which issued as the D'105 patent on August 15, 2023. ████████████████████████ ████████████████████████████████████████████████ ████████████████████

Plaintiff's D'105 application went abandoned in December 2020 after failing to respond to a Notice of Missing Parts. Yet in 2021, while no application was pending, Plaintiff warned Brixley not to copy its "patent-pending" bag design. Brixley, a small local company, altered its own bag in response, not knowing that contrary to the lawyer letter, the application was in fact abandoned. Plaintiff subsequently revived the application on January 21, 2022.

In mid-2023, as the D'105 application neared allowance, Plaintiff filed a continuation on July 28, 2023, seeking broader protection. This continuation issued as the D'591 patent on May 7,

1

2024. In the D'591 patent, Plaintiff disclaimed certain features—such as the front zipper teeth and raise logo patches—by using dotted lines, attempting to claim a broader form around the bag's shape and strap attachment. Despite this, the fundamental design remained the same modern tech-style crossbody bag with a boxy shape and asymmetrical D-ring arrangement, mirroring the Tommy Hilfiger Crossbody (also sold as the Urban Tech Reporter Crossbody) that had been available in major retailers for years. As before, Plaintiff did not disclose the Tommy Hilfiger bag to the USPTO during prosecution of the D'591 patent.

### B. Tommy Hilfiger's Crossbody Bag Is Prior Art

Tommy Hilfiger, through its streetwear line, has produced crossbody bags since at least 2019. Professor Howell describes the Tommy Hilfiger Crossbody design as "a boxy, modern-tech overall shape framed by four rounded corners," "a recessed, one-way gusset zipper that reinforces a clean and geometric design aesthetic," and a "memorable back panel" where the D-ring arrangement creates intentional irregularity, confirming that the D'105 and D'591 patents would be seen as essentially embodying the same design.

Crucially, the Tommy Hilfiger Crossbody bag was publicly available before Plaintiff's claimed design. In 2019, Tommy Hilfiger bags were advertised and sold worldwide. ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████. There is no genuine dispute that the Tommy Hilfiger Crossbody bag predates Plaintiff's patents and was publicly available before October 23, 2020.

████████████████████████████████████████████████████████05

███████████ It embodies the same combination of ornamental elements and overall impression as Plaintiff's claimed designs. Any minor differences are insignificant and do not confer novelty or nonobviousness; the prior art made it obvious to incorporate or omit such features as needed, so Plaintiff's patents cannot survive an obviousness analysis.

In short, by 2019, the design community had access to the design Plaintiff later claimed. The story of Plaintiff's patents—from inspiration by but non-disclosure of Tommy Hilfiger, to abandonment and revival, and then selective broadening—demonstrates these patents were not the product of original design, but derived from undisclosed pre-existing style epitomized by the Tommy Hilfiger Crossbody.

## STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

### A. Legal Elements Required To Prevail On This Motion

To prevail on its Motion, Brixley has the initial burden of showing that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). "The burden is on an accused infringer to show by clear and convincing evidence facts supporting the conclusion that the patent is invalid." *Int'l Seaway Trading Corp. v. Walgreens Corp.,* 589 F.3d 1233, 1242 (Fed. Cir. 2009). To find a design patent is invalid as anticipated under 35 U.S.C. §102 by a single prior art reference, "the ordinary observer test is the sole test of invalidity." *Id.* at 1244. "Although the ordinary observer test requires consideration of the design as a whole, this does not prevent the district court on summary judgment from determining that individual features of the design are insignificant from the point of view of the ordinary observer and should not be considered as part of the overall comparison." *Id.* at 1243. The mandated overall comparison is a comparison taking into account significant differences between the two designs,

not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another. *Id.* Federal Circuit precedent "makes clear that all of the ornamental features illustrated in the figures must be considered in evaluating design patent …anticipation." *Id*. at 1241.

"Obviousness, like anticipation, requires courts to consider the perspective of the ordinary observer." *Id*. at 1243-44. In a 2024 en banc decision, the Federal Circuit declared that a design patent is likewise invalid as obvious under 35 U.S.C. § 103 if "[a]fter ascertaining the knowledge of an ordinary designer in the relevant field, the scope and content of the prior art, and the differences between the prior art and the claimed design, the obviousness of the claimed design is evaluated... an ordinary designer in the field to which the claimed design pertains would have been motivated to modify the prior art design "to create the same overall visual appearance as the claimed design." *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1299 (Fed. Cir. 2024). *LKQ* reaffirmed that the obviousness "inquiry focuses on the visual impression of the claimed design as a whole and not on selected individual features." *Id.*

Thus, under binding Federal Circuit case law concerning design patents, Brixley can meet its burden for anticipation by demonstrating that the D'105 and D'591 patents are substantially similar to the Tommy Hilfiger Crossbody under the ordinary observer test, considering all ornamental features, as established in *Int'l Seaway*. For obviousness, Brixley can meet its burden to prove obviousness, by providing convincing evidence that D'105 and D'591 patents are obvious implementations of the Tommy Hilfiger Crossbody design and/or that an ordinary designer would have been capable of and motivated to make minor adjustment to eliminate as residual minor differences.

**B.  Undisputed Facts That Establish The Legal Element**

    **1.  Plaintiff's Asserted Design Patents:** Plaintiff is the assignee of U.S. Design Patent No. D995,105 (issued August 15, 2023) (DX 1, cover page) and U.S. Design Patent No. D1,025,591 (issued May 7, 2024) (DX 2, cover page), both titled "Cross-body bag." The D'591 patent is a continuation derived from the D'105 patent's disclosure. (DX 2 cover page, at (63)(yellow highlighting added)).

    **2.  Claimed Design Features:** The D'105 and D'591 patents claim the ornamental design for a cross-body bag as shown and described. (DX 1, DX 2, claim). The figures show a boxy shaped bag with rounded corners with a substantially flat front panel spanned by a visible one-way zipper recessed below the front panel face. (DX 1, DX 2 Figs. 1, 4). A raised rectangular logo patch or corresponding dotted line area (not claimed) is evenly spaced adjacent to edges of the lower right corner. *Id*. Rising above a substantially flat back panel are two upper D-rings arranged at the top of bag spaced apart and near the rounded corners (DX 1, DX 2 Fig. 5) and a single D-ring is positioned at a lower corner. *Id*. The D'591 continuation application drawings are identical to those of the D'105 patent except that the front zipper teeth and the logo patches are shown in dotted lines. (DX 2 Figs. 1, 4, 5).

    **3.  Tommy Hilfiger Crossbody Bag Availability as** ███████████ **Prior Art:**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



████████████████████████████████████████

██████████████████████████████

███████████████████████████████████████

████████████

### 4. Tommy Hilfiger Crossbody Bag Shares Overall Ornamental Core Design Aspects With The D'105 and D'591 Design.

The Tommy Hilfiger Crossbody bag design includes the following prominent features: a boxy, rounded-corner rectangular shape; a front zipper pocket spanning the width of the bag's



DX 8 - All Views Image Set Tommy Crossbody and D`105 Figs 1-7

front panel; a small rectangular logo patch on the lower front panel.  A  notable arrangement of D-

rings stands out on the back panel. (two symmetrically positioned D-rings at the top near the start of the upper corners with a clean unadorned area between two D-rings and with single D-ring position near a lower corner creating an asymmetric visual rhythm).(Howell Decl. ¶¶ 36-40).

    **5. Patent Office Did Not Consider Tommy Hilfiger Prior Art:** The Tommy Hilfiger Crossbody bag was not cited or considered by the patent examiner during prosecution of the D'105 patent. (DX 11, consists of three parts: references cited by Plaintiff, references cited by examiner, and references cited by Plaintiff and considered by examiner, and the Tommy Hilfiger Crossbody does not appear in any Non-Patent Literature sections submitted by Plaintiff or considered by the examiner). Likewise, during the prosecution of the D'591 patent, the Tommy Hilfiger Crossbody bag was not cited or considered by the patent examiner (DX 8, consists of three parts: references cited by Plaintiff, references cited by examiner, and references cited by Plaintiff and considered by examiner). Accordingly, the USPTO never had an opportunity to compare the Tommy Hilfiger Crossbody to either the D'105 or D'591 design before issuing those patents.

## LEGAL ARGUMENT AND SUPPORTING AUTHORITY

**I.   D'105 and D'591 Patents Are Anticipated by the Tommy Hilfiger Crossbody (35 U.S.C. § 102)**

    **A.** ██████████████████████████████████████

    Federal Circuit law recognizes that an applicant's admission of a prior design (e.g., through knowing about a pre-existing product) qualifies as prior art that can be used to challenge patentability under § 102. *See, e.g.*, *In re Nomiya*, 509 F.2d 566, 570–71 (C.C.P.A. 1975) (holding applicant's statements admitting prior art status establish it as prior art); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1569 (Fed. Cir. 1988) (recognizing applicant's acknowledgment of prior art in specification as admissible for invalidity).



**B. Ordinary Observer Would See No Difference Between the Designs**

The Federal Circuit has made clear that the test for design patent anticipation is identical to the test for infringement: the ordinary observer test. On this standard, the Federal Circuit explained: "In light of Supreme Court precedent and our precedent holding that the same tests must be applied to infringement and anticipation, and our holding in *Egyptian Goddess* that the ordinary observer test is the sole test for infringement, we now conclude that the ordinary observer

test must logically be the sole test for anticipation as well. In doing so, we will prevent an inconsistency from developing between the infringement and anticipation analyses, and we will continue our well-established practice of maintaining identical tests for infringement and anticipation." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009). "Both the ordinary observer test, whether applied for infringement or invalidity, and the obviousness test, applied for invalidity under Section 103, focus on the *overall* designs." *Id.*, at 1240–41. In short, all ornamental features illustrated in the figures shown in a design patent must be considered whether evaluating infringement or anticipation of the design. *Id.* at 1241.

Although the ordinary observer test evaluates the design as a whole, a court may disregard individual design features that are insignificant to the ordinary observer's eye. The overall comparison is meant to account for significant differences, not minor or trivial variations that inevitably exist between any two non-identical designs. Just as minor differences cannot avoid infringement, minor differences likewise "cannot prevent a finding of anticipation." *Int'l Seaway*, 589 F.3d at 1243. *Id.* at 1243 (internal citations omitted).

Applying that standard here, the undisputed facts establish that a single prior art article – the Tommy Hilfiger Crossbody bag – embodies the same design that Plaintiff claims in the D'105 and D'591 patents. Under the ordinary observer test for design patent novelty, this prior art reference anticipates the patents, rendering them invalid under 35 U.S.C. § 102.

10



DX 8 - All Views Image Set Tommy Crossbody and D'105 Figs 1-7

Consistent with *Int'l Seaway*, Brixley has submitted a comprehensive set of images (DX 8) showing seven views of the prior art Tommy Crossbody bags that correspond to all seven views in the D'105 and its continuation D'591. Under the ordinary observer test for design patent novelty, the Tommy Hilfiger Crossbody (as a prior art reference) creates the same overall visual impression as the patented designs, and therefore anticipates them, rendering the patents invalid under § 102.

Additionally, a side-by-side overall visual comparison of the Tommy Hilfiger Crossbody

and Plaintiff D'105 and D'591 design patents from the point of view of an ordinary purchaser of shoulder bags, sling bags, messenger bags, crossbody bags is illustrated in Exhibit DX 10 Side-by-Side Comparison Tommy Prior Art v. Design Patents (also reproduced inline below).

Key shared features reinforce this conclusion. Both designs have a flat back panel with a three-point D-ring configuration: two upper D-rings for shoulder straps and one lower D-ring for an alternate diagonal strap. Both have a flat front panel with four rounded corners, interrupted only by a recessed channel for a visible one-way zipper that opens from the left side. Both feature a raised logo patch on the lower right front, evenly spaced from the bag's edges. These visual aspects, present on the Tommy Hilfiger Crossbody since 2019, give a simple, modern tech styling to both bags. The Tommy Hilfiger bag was designed to blend into everyday settings (commuting, travel, etc.), and Thread's bag embodies that same aesthetic,

Under *Int'l Seaway* and *Gorham*, the test is whether these designs are substantially the same to an ordinary observer. Here, that test is plainly met: an ordinary observer would be unable to distinguish Plaintiff's patented design from the Tommy Hilfiger Crossbody bag. If the two products were placed on a store shelf, that observer would think they are just two versions of the same item (perhaps from the same brand or related brands), not two distinct creative works.

Indeed, there is no unique visual element in Plaintiff's design that sets it apart from the Tommy Hilfiger Crossbody in the observer's eyes. The Tommy Hilfiger Crossbody contains all of the ornamental features of Plaintiff's claimed design and creates the same overall impression. This is anticipation under the ordinary observer test. *Int'l Seaway*, 589 F.3d at 1240-41.

Plaintiff may attempt to point to slight differences in detail – but none rise to the level of patentable distinction. For example, any slight differences in logo patch size or logo patch design

such as whether the patch says "THREAD" or "TOMMY" or is blank, the visual contribution – a raised contrasting rectangle positioned adjacent to the bottom right corner of the front panel – is essentially the same. Similarly, the presence or absence of a small accessory ring on the front would not prevent an ordinary observer from recognizing the two designs as the same. Howell Decl. ¶ 50

Notably, in the D'591 patent, Plaintiff explicitly disclaimed the logo and front zipper (depicting them in dotted lines). This means the claimed D'591 design is even more skeletal and broad, encompassing just the bag's shape and ring configuration. The Tommy Hilfiger Crossbody's inclusion of a logo and visible zipper still inherently includes the D'591 design, since those added details are unclaimed and the overall form is the same. It is well-established that a prior art reference anticipates a design patent even if the reference has extra ornamentation, so long as the patented design is discernible within it. Here, the patented design is fully embodied in the Tommy Hilfiger Crossbody; one minor extra feature on the Tommy bag does not change the design's fundamental identity.

Because any arguable differences are so minor, they do not create a genuine issue of fact for trial. The law does not require designs to be *exactly* identical to find anticipation – "substantial similarity" in overall appearance suffices, and that bar is cleared here with ease. Indeed, this is a paradigmatic case for design anticipation: seen together from every view the prior art and the claim are virtually twins.

Moreover, Plaintiff's attempt during prosecution to recast the design (by showing the zipper teeth in dotted lines in the D'591 continuation) does not alter the dominant visual appearance of the design and thus does not avoid anticipation. The core claimed design (a

rectangular boxy shape with rounded corners, a generally flat front panel, a rear panel with the 3-point D-ring configuration, and a centered gusset zipper) is plainly present.



DX 10 - Side-by-Side Overall Visual Comparison

14

II.    **The Asserted Design Patents Are Obvious in View of the Tommy Hilfiger Crossbody (35 U.S.C. § 103).**

Even if the Court were to find a triable issue as to anticipation (despite the overwhelming similarity), summary judgment of invalidity is still warranted because the asserted designs would have been obvious in light of the Tommy Hilfiger Crossbody. In truth, this is an extremely strong obviousness case: a prior art design that so thoroughly resembles the claimed design (as shown above) renders the claim at least obvious, if not outright anticipated.

The Supreme Court in *KSR* emphasized an "expansive and flexible approach" to obviousness, and the Federal Circuit has echoed that approach for design patents. *LKQ Corp. v. GM Glob. Tech. Ops. LLC*, 102 F.4th 1280, 1294 (Fed. Cir. 2024). Accordingly, invalidating a design patent for obviousness must follow the classic *Graham* framework in a flexible manner. Specifically, the court considers the four *Graham* factors as follows:

1. Determine the scope and content of the prior art by identifying a primary reference – typically the prior art design most visually similar to the claimed design. *Id.* A single primary reference can render a design obvious; often a primary reference combined with a secondary reference may be used. *Id.*

2. Compare the visual appearance of the claimed design and the prior art designs from the perspective of an ordinary designer in the field. *See Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012) (obviousness asks whether "one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design") (quoting *Titan Tire*, 566 F.3d at 1381)); *In re Borden*, 90 F.3d 1570, 1574–76 (Fed. Cir. 1996) (affirming obviousness where differences between prior art and claimed design had little or no effect on overall appearance).

15

3. Evaluate the level of ordinary skill in the relevant design field (typically through expert testimony or common sense).

4. Once a challenger has (i) identified a primary reference that creates basically the same overall impression, and (ii) shown that any combination with secondary references would have been within the skill of an ordinary designer, the burden shifts to the patentee to produce objective evidence tied to the specific ornamental features that allegedly distinguish the claim from the prior art. Absent such a nexus, secondary considerations cannot rescue a design that fails the first three *Graham* factors. *See Campbell Soup Co. v. Gamon Plus, Inc.*, 939 F.3d 1335, 1342–44 (Fed. Cir. 2019).

Moreover, *LKQ* makes clear that a single prior art reference like the Tommy Hilfiger Crossbody can support a finding of obviousness if accompanied by a reasoned explanation why the claimed design would have been within the ordinary designer's skill to create, using that referencefile-4rxuqz7r9sp3ddkb2fyhq4. In other words, where anticipation is based on minor differences that don't change the overall appearance to an ordinary observer, the court may find both anticipation *and* obviousness. *See LKQ*, 102 F.4th. at 1295 (reaffirming that obviousness focuses on the overall visual impression of the design as a whole, not selected features, and citing cases where minor differences had no effect on overall appearance).

**A. Tommy Hilfiger Crossbody Bag Serves As Primary Reference.**

Here, the Tommy Hilfiger Crossbody serves as a clear and compelling primary reference under the LKQ-Graham framework, rendering the D'105 and D'591 patents invalid as obvious. The Tommy Hilfiger Crossbody, ███████████████████████████████████ ███████████████████████████████ embodies substantially the same overall ornamental

appearance and core design features as the claimed patents.

Both the D'105 and D'591 designs drawn upon substantial the same ornamental features expressed in the earlier designed Tommy Hilfiger Crossbody bag, namely an overall modern tech boxy shape with simple rounded corners that prominently features a visible one-way gusset zipper that opens from the left side and is centered front-to-back within the gusset. Like the Tommy Hilfiger Crossbody bag, both the D'105 and D'591 designs exhibit a flat back panel an eye-catching D-ring arrangement with two upper D-rings separated by unadorned space and a single D-ring position near a lower corner. These features collectively define the overall aesthetic impression of the designs being compared.

**B. Minor Tweaks Are Routine Design Choices.**

Minor variations between Plaintiff's design and the Tommy Hilfiger bag would have been obvious design choices to any ordinary designer. As Professor Howell explains, "[a]ny small variations in logo content, front accessory, [or] mirror imaging of the three-point D-ring configuration are trivial and fail to shift the primary design expression." Such slight changes "would not cause the ordinary observer to see the overall visual appearance of as that of a different crossbody bag design." (*Id.* ¶¶ 36, 41). In other words, as also evidenced by the anticipation analysis, the D'105 and D'591 designs are so close to the Tommy Hilfiger Crossbody that any small differences do not alter the overall look and feel.

The level of ordinary skill in the art further strongly supports a finding of obviousness for both the D'105 and D'591 patents. As Professor Howell notes, "soft goods designers routinely adjust logo content, attachment means (e.g., D-ring) positioning without inventive skill, and inclusion or omission of minor accessories such as a front ring without substantially impacting the

17

overall design aesthetic. Such modifications are well within the capabilities of an ordinary designer." (Howell Decl. ¶ 49).

There are well-recognized reasons an ordinary crossbody bag designer would make minor modifications to a known design. For example, Professor Howell explains that a designer of ordinary skill would be motivated — for ergonomic and functional reasons — to mirror-image the D-ring configuration in some cases, improving how the zipper lies when the bag is worn diagonally. This straightforward, predictable design choice would facilitate one-handed opening of the top zipper while minimizing the risk of items spilling out. Crucially, making the D-rings mirrored (left vs. right side lower placement) does not alter the memorable asymmetric three-point D-ring arrangement on the back panel. Similarly, omitting or relocating a small front accessory ring is a pragmatic, user-centric decision (reducing snag points or cost) that doesn't affect the overall aesthetic. Such tweaks are routine and efficiency-driven, and they leave the overall visual impression unchanged.  *Id*. ¶ 50.

Under the flexible *LKQ* inquiry, the close match in ornamental appearance between the claimed designs (D'105 and D'591) and the Tommy Hilfiger Crossbody means that the claimed designs would have been obvious to create. The minor user-centric adjustments a designer might make — as described above — would have "little or no effect on the overall appearance of the design," confirming that the claimed designs are prima facie obvious.

### C. No Real-World Evidence Suggests a Unique Design.

Finally, "[c]onsistent with *Graham*, the obviousness inquiry for design patents still requires assessment of secondary considerations as indicia of obviousness or nonobviousness, when evidence of such considerations is presented." *LKQ,* 102 F.4th at 1300. On this factor, Prof. Howell

explains: "objective indicia of nonobviousness of the types described in *LKQ* is absent. The record shows that Thread Wallets drew direct inspiration from the Tommy Hilfiger Crossbody, and there is no evidence of commercial success, industry praise, or other objective indicia of nonobviousness tied to the claimed designs, or copying by others beyond what was already prevalent) that suggests nonobviousness." (Howell Decl. ¶ 52). On the contrary, the only "copying" evidence in this case indicates that Plaintiff used the form, style, and overall aesthetic of the Tommy Hilfiger Crossbody, not the other way around. Thus, all pertinent factors point toward obviousness.

Consistent with Graham, we must also consider secondary indicia of non-obviousness (if any). Here, none exist. Professor Howell observes that "objective indicia of nonobviousness of the types described in LKQ is absent." (Howell Decl. ¶ 52). The record shows Thread Wallets drew its crossbody design directly from the Tommy Hilfiger Crossbody, and there is no evidence of commercial success, industry praise, or any other secondary consideration tied to the specific design features at issue. There is also no evidence of others independently copying Thread's design (aside from Plaintiff's own imitation of Tommy Hilfiger's style, which is the reverse of what would indicate non-obviousness). In fact, the only "copying" in this case was done by Plaintiff, who used the form, style, and overall aesthetic of the Tommy Hilfiger Crossbody. Thus, all pertinent factors point toward obviousness.

In conclusion, the D'105 and D'591 patents are invalid as obvious under § 103. The Tommy Hilfiger Crossbody embodies the same overall design, and any minor differences are routine, predictable modifications that would have been obvious to an ordinary designer. No reasonable jury could find otherwise under the LKQ–Graham framework. Given how one-sided the evidence is, granting summary judgment is a straightforward acknowledgment that no

reasonable juror could find an inventive distinction when the hypothetical ordinary observer would perceive no material differences

## CONCLUSION

Brixley respectfully requests that the Court **GRANT** its Motion for Summary Judgment. The uncontroverted prior art record demonstrates that D'105 and D'591 patents are invalid as a matter of law for lack of novelty and obviousness under 35 U.S.C. §§ 102 and 103. The Tommy Hilfiger Crossbody bag was a pre-existing design encompassing the same ornamental appearance claimed by Plaintiff's patents. Because no genuine issue of material fact exists as to the substantial identity between the prior art and the claimed designs, and because a reasonable fact-finder could only conclude that the patents are invalid, Brixley is entitled to judgment in its favor. Accordingly, Brixley asks that summary judgment be entered invalidating the D'105 and D'591 patents and dismissing with prejudice Plaintiff's design patent infringement claims.

DATED: June 16, 2025.                          Respectfully submitted,

                                               **KB&A, PC**

                                               */s/ Chad Pehrson*
                                               Chad Pehrson
                                               Thomas D. Briscoe
                                               Bryan B. Todd
                                               *Attorneys for Defendant*
                                               *and Counterclaim Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2025, I caused to be filed a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT OF INVALIDITY** via the Court's electronic filing system, which effectuated service on all counsel of record.

*<u>/s/Chad Pehrson</u>*