Chad Pehrson (12622) cpehrson@kba.law
Thomas D. Briscoe (16788) tbriscoe@kba.law
Bryan B. Todd (19099) btodd@kba.law
**KB&A, PC**
50 West Broadway Ste 1000
Salt Lake City, UT 84101
Telephone: (801) 994-4646

*Attorneys for Defendant and Counterclaim Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| THREAD WALLETS LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BRIXLEY BAGS, LLC, a Utah limited liability company;<br><br>Defendant. | Case No. 2:23-cv-00874-JNP-JCB<br><br>**DECLARATION OF EXPERT BRYAN F. HOWELL IN SUPPORT OF DEFENDANT BRIXLEY BAGS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

I, Bryan F. Howell, declare under penalty of perjury under the laws of the United States as follows:

***Background and Qualifications***

1.  I am a Professor of Industrial Design in the Design Department at Brigham Young University ("**BYU**"), Provo, Utah, where I have taught studio-based courses in product design and development, including soft goods, since 2006.

2.  Education: I earned a Master of Fine Arts (M.F.A.) in Design from the University of Texas at Austin in 2003 and a Bachelor of Fine Arts (B.F.A.) in Industrial Design from BYU in

1

1987.

3.  Industry Practice: I have thirty-seven (37) years of professional industrial-design experience. Before entering academia, I founded and directed Pure Design Labs, a product, graphic, and packaging design consultancy. I held design-leadership positions at Dell Computer and managed projects at global consultancies including IDEO, Ammunition, and Seymour Powell. Prior to Dell, I was a designer and manager at frog design, a leading product design consultancy with clients in Europe, Asia and North America.

4.  My soft goods experience includes the design, development, and patenting of cross-body bags, hip packs, armbands, and related accessories for clients such as Sportline, Walmart, Target, and Gravel Travel. In 2019–2020, I served as a paid design consultant to Gravel Travel and am named as a co-inventor for their convertible hip belt/crossbody bag and backpack system later issued as U.S. Patent 11,447,916.

5.  Expert-Witness & Intellectual-Property Experience: Since 2014, I have consulted in patent matters, district-court litigation, Inter Partes Reviews (IPRs), and Ex Parte Re-examinations, and have been designated as a testifying expert in design-patent disputes (e.g., Handstands Promo LLC v. Spectra Merchandising, Civ. No. 2:18-cv-00241; IPR2022-00533 (U.S. Pat. 10,912,708)). I am named as an inventor on thirty-two (32) U.S. and international patents.

6.  Research & Scholarship: Since 2006 I have authored or coauthored more than sixty (60) peer-reviewed publications and conference presentations on design education, visualization, and consumer perceptions of design-related topics.

7. Awards & Recognition: My designs have received twelve International Design Excellence Awards (IDSA), a Red Dot Award, a G-Mark Award, and collected by the Design Museum (London) and the Royal Museums Greenwich (U.K.).

8. Further details e.g., representative student projects, commercial projects, and publications are in my Curriculum Vitae (**Ex. A**) and Soft Goods Portfolio (**Ex. B**) (attached).

9. I have been retained by Defendant Brixley Bags, LLC to provide expert opinions in support of its Motion for Summary Judgment that U.S. Design Patents D995,105 ("D'105") and D1,025,591 ("D'591") are invalid under 35 U.S.C. §§102 & 103.

10. The visual-analysis techniques I employ, including the ordinary-observer comparison, the *LKQ* framework[1] for determining design patent obviousness, and structured side-by-side visual impression of the two designs as informed by the aesthetic effect of the design features, are consistent with established methods I have applied in prior cases.

11. My opinions are objectively based on my expertise and the materials provided.

***Materials Reviewed***

12. Brixley's Motion for Summary Judgment, including the Statement of Elements and Undisputed Material Facts and attached exhibits DX1-D12 in the Appendix of Evidence[2].

13. Deposition testimony of Colby Bauer (Thread Wallets' CEO) and internal Thread documents (e.g., THREAD_001196, THREAD_001197 which are photos of the Tommy Hilfiger crossbody bag in Corporate Navy color) are acknowledged as prior art and inspiration by inventor

---

[1] LKQ framework: precedential realignment of framework for evaluating obviousness of design patent claims with expansive and flexible approach articulated in *KSR* and *Graham* (*LKQ Corp. v. GM Global Tech Operations LLC*, 102 F.4th 1280) (Fed. Cir. 2024).

[2] References herein to DX1-D12 refer to the Exhibits listed in Appendix of Evidence attached to Brixley's Motion for Summary Judgment of Invalidity.

Colby S. Bauer and IP liaison Ryan King,[3] confirming the Tommy Hilfiger Crossbody bag as Applicant Admitted Prior Art (AAPA) at the time the D'105 and D'591 patent applications were filed by Applicant Thread Wallets LLC.

14. Prior art references comprising hundreds of images and multiple exemplars of bags of the same or similar type as those depicted in D'105 and D'591 patent applications. These prior art references included images from BRIXLEY_006683-6913 produced in supplemental production to Plaintiff on Feb 17, 2025.

15. Sections of Brixley's Amended Answer to First Amended Complaint[4] and Counter-claims related to drawings of the D'105 and D'591 patent applications, including sections[5] related to affirmative defenses and counterclaims based on drawing-related issues.

16. Legal standards for design-patent anticipation and obviousness, including *Gorham Co. v. White*, 81 U.S. 511 (1871); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233 (Fed. Cir. 2009); *LKQ Corp. v. GM Global Tech Operations LLC*, 94 F.4th 1364 (Fed. Cir. 2024); and relevant Federal case law cited in Brixley's Motion for Summary Judgment.

17. I utilized the above-listed materials and my own professional knowledge and experience.

---

[3] Pursuant to Standard Protective Order DUCivR 26-2 signed and dated October 25, 2024
[4] *Id.*;
[5] Sections addressing Brixley's non-infringement and invalidity positions due to the presence of improper lines and shading shown in the drawings of the D'105 and D'591 patent applications. Solely for this §102/103 prior-art analysis, Brixley treats the improper lines and shading that appear in the D'105 and D'591 drawings—but are absent from the Tommy Hilfiger Crossbody bag—as unclaimed and therefore disregarded. This analytic convention is adopted only to compare the impact of the remaining design elements on the overall appearance and does not waive or limit any other non-infringement, invalidity, or related defenses or counterclaims based on those lines or shading under any other provision of Title 35 or controlling case law.

*Scope of Opinion*

18.  I was asked to determine whether a prior art product, the Tommy Hilfiger crossbody bag, anticipates the ornamental designs claimed in the D'105 patent and the D'591 patent.

19.  Drawing on decades of experience designing hard and soft goods for industry and preparing young designers to successfully enter industry as trained and thoughtful hard and soft good product designers, I evaluated the ornamental designs of both products.

20.  A design's ornamentality is determined by its overall appearance in its entirety. A distinction is made between a product's abstracted functional purpose and features, and its aesthetic ornamental functionality.

21.  The following sections report my analysis of the ornamental appearance of the claimed D'105 and D'591 designs in relation to the Tommy Hilfiger Crossbody bag.

*Anticipation Analysis (35 U.S.C. § 102)*

22.  A prior art reference anticipates a claimed design if it discloses the same article having an overall aesthetic that would appear substantially the same to a hypothetical ordinary observer familiar with prior art (*Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed. Cir. 2009). The overall designs must be compared rather than individual elements of the two designs (*Ethicon Endo-Surgery*, Inc., 796 F.3d at 1335; *Int'l Seaway*, 589 F.3d at 1243).

23.  To perform this analysis, I took the following steps: in a manner consistent with my experience in patent anticipation analysis informed by current design patent caselaw.

24.  Define the Scope of the Claimed Designs. The claim of the D'105 and D'591 Patents states "The ornamental design for a cross-body bag, as shown and described." What is shown are seven Figures in the both the D'105 and the D'591 patents, namely: perspective (Fig.

5

1), bottom (Fig. 2), top (Fig. 3), front (Fig. 4), rear (Fig. 5), right side (Fig. 6), and left side (Fig. 7). An identical description describes the views of the Figures for both patents and states that "Dotted lines represent portions of the cross-body that form no part of the claimed design." Unclaimed portions of the design are not included in the anticipation analysis. For both the D'105 and the D'591 patents dotted lines are used to illustrate a zipper slider and pull tab for both a front zipper and a gusset zipper. For the D'591 patent dotted lines are used for the front zipper teeth and the raised logo patches.

25. Because many of the elements depicted in the D'105 and D'591 could have both functional and ornamental aspects, I considered the effect of the ornamental aspects of elements depicted in all views depicted in Figures 1-7 of the claimed D'105 and D'591 crossbody bag designs and compared the overall aesthetic appearance of the design patents to a single prior art reference, the Tommy Hilfiger Crossbody bag.

26. To determine whether a single prior art reference could be examined under the ordinary observer test for anticipation, I examined more than 200 prior art images of crossbody bags and the images of the Tommy Hilfiger Crossbody bag which Mr. Bauer recognized as the crossbody bag seen in the 3/4 front view photo THREAD_001196 (DX 5) and the 3/4 back view photo THREAD_001197 (DX 6) that stand out as extremely closely matching the claimed D'105 and D'591 designs.

27. The Tommy Hilfiger photos Mr. Bauer collected and saved to his mood board were memorable. Their overall ornamental design so closely matches that of the D'105 and D'591 designs as can be plainly seen in DX 8 - All Views Image Set Tommy Crossbody and D'105 Figs 1-7.

28. To simulate the perception of the ordinary observer, I considered how a hypothetical observer of crossbody bags familiar with the prior art including the Tommy Hilfiger Crossbody would perceive the overall ornamental expressions of the designs.

29. I understand that "The ordinary observer test applies to the patented design in its entirety, as it appears in the drawings, and not to selected elements in isolation." *High Point Design LLC v. Buyer's Direct, Inc.*, 730 F.3d 1301, 1312 (Fed. Cir. 2013).

30. I looked at various photos of same model of Tommy Hilfiger Crossbody both from online photographs and in photographs of an exemplar of the Tommy Hilfiger Crossbody bag with all views corresponding to the D'105 patent figures, as shown in DX 8 - All Views Image Set Tommy Crossbody and D'105 Figs 1-7 to Brixley's Motion for Summary Judgment of Invalidity which is reproduced below.

31. The overall boxy form with a modern tech style makes the official style name the "Urban Tech Reporter Crossbody Bag" under the Tommy Jeans Brand, a fitting descriptive moniker for this bag's style and function.



DX 8 - All Views Image Set Tommy Crossbody and D'105 Figs 1-7

32. As can be seen from the photos and drawings, an ordinary observer would find the 'effect of the whole design substantially the same' as the effect of whole design shown in the D'105 and D'591 design patents. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative*

8

*Accessories, Inc.,* 942 F.3d 1119, 1131 (Fed. Cir. 2019).

33. Conduct a Side-by-Side Visual Comparison. I also conducted a thorough visual analysis, again from the point of view of the hypothetical ordinary observer familiar with the prior art, by directly comparing the claimed D'105 patent drawing with the Tommy Hilfiger Crossbody bag, referencing both public domain images and a hands-on inspection of the Tommy Hilfiger Crossbody bag.

34. An exhibit from Brixley's Motion for Summary Judgment of Invalidity, DX 10 Side-by-Side Comparison Tommy Prior Art v. Design Patents, shows the three major structural design components of the Tommy Hilfiger Crossbody Prior Art front panel, gusset, and back panel which are the same major structural design components of the D'105 and D'591 design.

35. Shape refers to the overall three-dimensional form or silhouette of a bag, which is defined by its structural configuration—such as seams, paneling, gussets, and any internal or external support elements (e.g., frames, stiffeners, or padding).

36. Style typically refers to the aesthetic classification of the design, which reflects broader visual and cultural trends in fashion or industrial design. Some examples of aesthetic styles include Minimalist: clean lines, lack of ornamentation, neutral colors; Modern/Tech: streamlined with technically sharp geometries (lines, curves, and planes) and functional with understated ornamentation. Contemporary/Fashion: Reflects current fashion trends and recently may include puffy surfaces, soft fluid flexibility, an extension of the wearer's outfits; Avant-Garde: Experimental, abstract, or sculptural designs that challenge conventional norms, e.g., shaped like a folded origami figure or a luxury brand tote with three or more hand sized holes cut into each side.

37. The Tommy Hilfiger Crossbody bag design has an overall boxy shape with a modern tech style which is also nearly perfectly mimicked in the D'105 and D'591 designs with the front and back panels that extend flatly to four rounded corners.



DX 10 - Side-by-Side Overall Visual Comparison

38. Both the Tommy bag and the D'105 use the flat front panel area efficiently, reserving ample negative space around a well-position one-way zipper that opens from the left side and a raised logo patch is spaced evenly from the lower right corner to create visual clarity and directional flow. This enhances the face-spanning zipper as a focal element while keeping space to the side of the logo area unadorned consistent with the clean modern style of the Tommy bag and the D'105 and D'591 designs.

39. The gusset on both designs houses a visible, one-way zipper that opens from the left side with a zipper running centrally within the gusset on both the Tommy Hilfiger Crossbody and on the patented designs capitalizes on the available lateral surface by maintaining central alignment, avoiding visual congestion, and reinforcing the modern-tech aesthetic through geometric clarity.

40. Design rhythm refers to the visual pattern or flow created by the repetition, spacing, and placement of design elements across a product. In bag design, rhythm is established through structural features (like seams, hardware, stitching, and panel shapes), material contrasts, and/or decorative elements that naturally guide the viewer's eye across the object in a particular way. A regular design rhythm is visually projected by repetition of identical or similar elements at consistent intervals, creating predictability and balance. An asymmetrical or irregular rhythm is created by deliberate disruptions or non-uniform placement of aesthetic elements to create visual interest or draw attention.

41. For both the Tommy Hilfiger Crossbody bag and the crossbody bag shown in the D'105 and D'591, the four rounded corners of the bag as seen when viewing the back panel establish a clear and deliberate regular design rhythm with a balanced, harmonious visual

cadence. Positioned near the upper corners, the two D-rings further reinforce a form of rhythmic design. The paired placement of the upper D-rings and the negative space between them generate a symmetrical, bilateral rhythm that echoes the rounded corner geometry. The eye naturally moves from one D-ring to the other, supported by the intervening gap, forming a beat-like visual pattern that's orderly and predictable. In stark contrast to the symmetry established above, the single D-ring placed in the lower corner breaks the established rhythm. Its asymmetrical positioning disrupts the predictable visual flow, creating a moment of intentional irregularity that draws the observer's attention. This lone hardware feature introduces a distinctive, almost rebellious visual note—a counterpoint to the established rhythm above as might be expected for the typical young urban actors pictured in the Tommy Hilfiger ads.

42. As noted in the DX 8 exhibit and as can be seen in DX 2, and DX 9, in the D'591 drawings, the logo patch lines and front zipper teeth lines are dotted but the effect of the various design aspects that are not shown in dotted lines ends in the same resulting overall ornamental appearance because the ornamentally significant portions of the design that impart that appearance are substantially the same for the Tommy Hilfiger Crossbody as they are for the both the D'105 and D'591 design.

43. Any small variations in logo content, mirror imaging of the rear panel D-ring configuration, and inclusion or omission of a front accessory ring, are trivial and fail to shift the primary design expression.

44. Based on a direct, side-by-side visual comparison conducted from the perspective of the hypothetical ordinary observer familiar with the prior art, the Tommy Hilfiger Crossbody bag exhibits substantially the same overall visual impression as the claimed designs in the D'105

and D'591 patents. The ornamental appearance is defined by a shared combination of features, including: (a) a boxy, modern-tech overall shape framed by four rounded corners; (b) a one-way gusset zipper that opens from the left side and runs centrally within the gusset, reinforcing a clean and geometric design aesthetic; and (c) a memorable back panel, where two upper D-rings are symmetrically positioned near the corners, creating a regular visual rhythm, while a single lower D-ring breaks that symmetry to introduce an intentional irregularity that aligns with the modern tech styling reflected in the "Urban Tech Reporter Crossbody" product name.

45. These ornamental features—both in their individual expression and collective visual impact—are substantially the same across the Tommy Hilfiger Crossbody and the D'105 and D'591 designs. The resulting overall appearance would lead an ordinary observer to view the Tommy Hilfiger Crossbody as indistinguishable in design from the claimed patents. Accordingly, the Tommy Hilfiger Crossbody anticipates the claimed designs under 35 U.S.C. § 102, rendering the D'105 and D'591 patents invalid for lack of novelty.

***Obviousness Analysis (35 U.S.C. § 103)***

46. Ordinary-Designer Perspective. An ordinary soft-goods designer in 2019 who was familiar with crossbody bag design and routinely combined known elements such as D-rings, zippers, and logo patches (see *High Point Design LLC v. Buyer's Direct, Inc.*, 730 F.3d 1301, 1313 (Fed. Cir. 2013)).

47. In my invalidity analysis based on obviousness, I followed the instructions given by the Federal Circuit in *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1298 (Fed. Cir. 2024) as explained in more detail in the Motion for Summary Judgment of Invalidity.

48. Determine the scope and content of the prior art: For my analysis, I examined

hundreds of prior art crossbody bag designs. Included in the designs I reviewed were the designs cited by the Applicant Thread Wallets and by the Examiner in the prosecution of D'105 and D'591 patents. I also looked at more than 200 prior art design images published in other design patents and applications which were included discover production documents BRIXLEY_ The Tommy Hilfiger Crossbody bag, which is admitted by the first named inventor to have been included in his "mood board" file or "inspo" (inspiration) file before the design, drafting, and filing of the D'105 patent, embodies substantially the same overall ornamental appearance and core design features as the D'105 and D'591 design for a cross-body bag.

49. Differences: As noted above, any differences in logo content, mirror imaging of the three-point D-ring configuration, or inclusion or omission of a small front accessory ring are trivial and fail to shift the primary design expression.

50. Level of Ordinary Skill: My experience as a designer, professor, and consultant, all confirm that soft goods designers routinely adjust logo content, attachment means (e.g., D-rings) positioning without inventive skill, and inclusion or omission of minor accessories such as a front ring without substantially impacting the overall design aesthetic. Such modifications are well within the capabilities of an ordinary designer.

51. Furthermore, a crossbody bag designer of ordinary skill would be motivated for ergonomic and functional reasons to keep the back panel upper D-rings as-is, symmetrically arranged to complement the visual rhythm of the four rounded corners while imparting an asymmetrical visual rhythm of the single lower D-ring. Using a mirror image implementation would improve the alignment of the gusset zipper slider's closed position when the bag is worn with clips attached diagonally, so that the gusset zipper faces up. This orientation would facilitate

one-handed opening of the gusset zipper from above while minimizing the risk of items spilling out upon opening. This adjustment is a straightforward, predictable design choice that does not alter the memorable asymmetrical D-ring arrangement on the back panel. Similarly, omitting or relocating a small accessory ring is a pragmatic decision to reduce catchpoints and save on assembly and material costs—another routine modification motivated by factors that are user-centric and efficiency-driven for designers but do not affect the overall design aesthetic.

52.     Secondary Considerations. Based on my knowledge in the field of design and on the information in the Materials Reviewed, objective indicia of nonobviousness of the types described in LKQ is absent. The record shows that Thread Wallets drew direct inspiration from the Tommy Hilfiger Crossbody, and there is no evidence of commercial success, industry praise, or other objective indicia of nonobviousness tied to the claimed designs, or copying by others beyond what was already prevalent) that suggests nonobviousness.

53.     Conclusion. For at least the reasons detailed above, the claimed D'105 and D'591 designs are anticipated by and obvious in view of the Tommy Hilfiger Crossbody bag. Accordingly, it is my opinion that both patents are invalid under § 103.

***Impact of Non-Disclosure to the USPTO***

54.     The Tommy Hilfiger Crossbody bag is highly material prior art. Its nondisclosure alone doesn't lower the "clear-and-convincing" bar —at least in the context of this Motion, the statutory presumption is not rebutted by the nondisclosure alone. But, when the omitted prior-art reference (here, the Tommy Hilfiger Crossbody) is (i) highly similar in overall ornamental appearance, (ii) memorable to an ordinary observer, and (iii) directly available for a side-by-side visual comparison with the claimed designs, it becomes very persuasive evidence that a judgment

of invalidity should be entered based on anticipation or obviousness in view of the Tommy Hilfiger Crossbody acknowledged as inspiration by the primary inventor.

***Overall Conclusion***

55.   The D'105 and D'591 patents are invalid under 35 U.S.C. §§ 102 & 103 for the reasons above.

Executed on June 16 2025, at Park City, Utah.

_____
Bryan F. Howell

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2025, I caused to be filed a true and correct copy of the foregoing **DECLARATION OF EXPERT BRYAN F. HOWELL IN SUPPORT OF DEFENDANT BRIXLEY BAGS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY** via the Court's electronic filing system, which effectuated service on all counsel of record.

*/s/Chad Pehrson*